1                                       The Honorable Marsha J. Pechman

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9               WESTERN DISTRICT OF WASHINGTON

10                          AT SEATTLE

11

| | |
|---|---|
| REDMOND CORP., a Washington Corporation, | |
| Plaintiff, | Case No. C06-1711-MJP |
| v. | DEFENDANTS ROSE ELECTRONICS, PETER MACOUREK AND DARIOUSH RAHVAR'S OPPOSITION TO PLAINTIFF AVOCENT REDMOND CORPORATION'S MOTION TO DISQUALIFY HELLER EHRMAN LLP |
| ROSE ELECTRONICS, a Texas General Partnership; PETER MACOUREK, an Individual; DARIOUSH "DAVID" RAHVAR, an Individual; ATEN TECHNOLOGY INC., a California Corporation; ATEN INTERNATIONAL CO., LTD., a Taiwanese Company; TRIPPE MANUFACTURING COMPANY, an Illinois Corporation; and BELKIN INTERNATIONAL, INC. (formerly Belkin Corporation), a Delaware Corporation, | |
| Defendants. | Note on Motion Calendar April 20, 2007 |

1   **I.   INTRODUCTION**

2      The motion to disqualify Heller Ehrman LLP (the "Motion") filed by Plaintiff Avocent

3   Redmond Corporation ("Redmond") is little more than a thinly-veiled attempt to gain a tactical

4   advantage in this litigation by requiring Defendants Rose Electronics, Peter Macourek and

5   Darioush Rahvar (collectively, "Rose"), to obtain new counsel.  Heller Ehrman LLP ("Heller

6   Ehrman") has never represented Redmond in any matter, nor does Redmond suggest that it

7   ever engaged Heller Ehrman to represent it an any matter.  Instead, Redmond obfuscates the

8   corporate formalities between it and its parent, Avocent Corporation ("Avocent"), which is not

9   a party to this litigation, and contends that Heller Ehrman's brief representation of Avocent in

10   2004 creates a conflict of interest that precludes Heller Ehrman from representing Rose in the

11   present patent infringement action.  Redmond also attempts to cloud the issue by ignoring the

12   plain language of Heller Ehrman's engagement letter with Avocent, and by putting forward

13   bare and legally-insufficient allegations to support its claim that the matters are "substantially

14   related."   In short, the facts necessary to support disqualification are simply not present here.

15   **II.   FACTUAL BACKGROUND**

16      **A.   Heller Ehrman's Representation of OSA Technologies.**

17      Beginning in April 2000, the Venture Law Group ("VLG") commenced its

18   representation of OSA Technologies ("OSA") on corporate matters.  Declaration of Jon

19   Gavenman ("Gavenman Decl.") ¶6.  This representation was transferred to Heller Ehrman on

20   October 1, 2003, when VLG joined with Heller Ehrman, bringing OSA with it as a client.  *Id.*

21   at ¶¶2, 7.  VLG provided counseling in the following areas: general corporate counseling,

22   intellectual property transactions and commercial licensing, tax, employee benefits and

23   compensation, and mergers and acquisitions.  *Id.* at ¶6.

24      In approximately December 2003, Avocent made initial overtures regarding an

25   acquisition of OSA.  *Id..* at ¶8.  Avocent eventually acquired OSA in April 2004, and OSA

26   became a wholly-owned subsidiary of Avocent.  *Id.*  Because Heller Ehrman had been OSA's

27   corporate counsel since 2000, Avocent requested that Heller Ehrman oversee certain post-

28   acquisition formalities.  *Id.*  However, both Heller Ehrman and Avocent understood in 2004

OPPOSITION TO MOTION TO DISQUALIFY        1
HELLER EHRMAN LLP:C06-1711P

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

1    that Heller Ehrman's engagement would cease when all post-acquisition matters had been

2    resolved. *Id.*, at ¶¶10, 11, 16, 23.  An engagement letter reflecting OSA's new status was

3    prepared and sent to OSA in April 2004.  Gavenman Decl., Ex. A.

4        During this same time period, Avocent also sought limited assistance from Heller

5    Ehrman on three discreet intellectual property licensing issues.  *Id.*, at ¶¶11, 12, 14.  Heller

6    Ehrman issued another engagement letter, this time to Avocent.  The relevant engagement

7    agreement made clear that Heller Ehrman represented only Avocent, and not any of Avocent's

8    subsidiaries, affiliates and individual constituents.  *Id.* at ¶11, Ex. B, Appendix ("Identity of

9    Client.").  Avocent never again called on Heller Ehrman to represent it in any matters after

10   September 2004, and Avocent transferred its corporate work to other counsel.  *Id.* at ¶¶16, 18,

11   22.  Further, each of the lawyers who performed intellectual property licensing work for

12   Avocent, Robert L. Lattuga ("Mr. Lattuga"), Eric M. Bowen ("Mr. Bowen") and Dawn Farber

13   ("Ms. Farber"), disassociated from Heller Ehrman long before Redmond filed this action.  *Id.*

14   at ¶17.

15       Based upon what is customary when a client is acquired in a transaction similar to the

16   OSA-Avocent transaction, and based on what attorneys for Heller Ehrman were told during the

17   time of the acquisition, Heller Ehrman attorney Jon Gavenman (the shareholder responsible for

18   the OSA engagement) believed that Heller Ehrman's representation of OSA and Avocent

19   terminated shortly after September 2004.  *Id.* at ¶¶ 11, 16, 17.  This belief was confirmed by

20   Avocent's request in 2005 for all of its intellectual property files in Heller Ehrman's

21   possession to other counsel, specifically, Davidson Berquist Jackson & Gowdey, LLP,

22   Avocent's counsel in this action.  *Id.* at ¶18.

23       **B.    Heller Ehrman's Representation of Rose.**

24       Heller Ehrman was retained to represent Rose in approximately January 2007.

25   Declaration of Molly A. Terwilliger ("Terwilliger Decl.") ¶3.  Before taking on the

26   engagement, Heller Ehrman attorney Molly Terwilliger ("Ms. Terwilliger") conducted a

27   search of Heller Ehrman's electronically-maintained conflicts database.  *Id.*  Heller Ehrman

28   took on the Rose engagement only after confirming that Redmond was never a Heller Ehrman

OPPOSITION TO MOTION TO DISQUALIFY                    2
HELLER EHRMAN LLP:C06-1711P

**Heller Ehrman** LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

1   client.  *Id.*  Ms. Terwilliger also confirmed, through Mr. Gavenman, that Avocent, the parent

2   of Redmond, was not a present client, and that no current Heller Ehrman attorneys have any

3   confidential information of Avocent material to Redmond's claims in this action.  *Id.*

4   **III.     ARGUMENT**

5      **A.     Heller Ehrman's Representation of Rose is Not Precluded by RPC 1.7.**

         **1.     Standard for Disqualification on Concurrent Representation.**

6

7      Redmond argues that Washington Rule of Professional Conduct 1.7 regarding the

8   concurrent representation of clients applies to Heller Ehrman in this action.  This is incorrect.

9   Fundamental to the applicability of RPC 1.7 is the existence of an attorney-client relationship

10  between the party invoking the rule and the lawyer against whom the rule is invoked.  Such a

11  relationship simply does not exist here.  Heller Ehrman has *never* had an attorney-client

12  relationship with Redmond, and Avocent terminated its relationship with Heller Ehrman two

13  years ago.

14      **2.     Heller Ehrman's Former Representation of Avocent Did Not Create
                 an Attorney-Client Relationship with Redmond.**

15      In its Motion, Redmond essentially argues that, by virtue of its status as one of

16  approximately twenty subsidiaries of Avocent, it automatically enjoyed an attorney-client

17  relationship with Heller Ehrman through Avocent.  This is simply not the law.  Indeed, such a

18  broad assumption would create vast uncertainty in the practice of law, and has been rightly

19  rejected by the federal courts.  *See* Declaration of Robert H. Aronson ("Aronson Decl."), ¶¶10,

20  13.  For example, in *Apex Oil Co., Inc. v. Wickland Oil Co.*, 1995 U.S. Dist. LEXIS 6398

21  (E.D. CA 1995), a corporation sought disqualification of an attorney who had formerly

22  represented a co-subsidiary of the moving party.  The *Apex* court explained that "even though

23  they are co-subsidiaries managed by the same legal department, the co-subsidiaries are not the

24  same client" under the ethical rules.  *Id.* at 6.  "In most instances," the court continued, "parent

25  corporations and subsidiaries are to be considered separate clients for conflicts purposes."  *Id.*

26  (citing *Teradyne, Inc. v. Hewlett Packard Co.,* 1991 U.S. Dist. LEXIS 8363, 20 U.S.P.Q.2D

27  (BNA) 1143, 1145 (N.D. Cal. 1991) (add'tl citations omitted); *see also In re Wingspread*

28

OPPOSITION TO MOTION TO DISQUALIFY          3
HELLER EHRMAN LLP:C06-1711P

**Heller Ehrman** LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

*Corp.,* 152 Bankr. 861, 864 (Bankr. S.D.N.Y. 1993) (refusing to disqualify law firm that sued parent corporation while simultaneously representing its subsidiaries in similar matters).

The ABA committee on Ethics and Professional Responsibility cautions against assuming that a firm's representation of one corporate affiliate will be deemed representation of an entire "corporate family." The Committee explained in Formal Opinion 390 that:

> It is the Committee's opinion that the Model Rules of Professional Conduct do not prohibit a lawyer from representing a party adverse to a particular corporation merely because the lawyer (or another lawyer in the same firm) represents, in an unrelated matter, another corporation that owns the potentially adverse corporation, or is owned by it, or is, together with the adverse corporation, owned by a third entity. The fact of corporate affiliation, without more, does not make all of a corporate client's affiliates into clients as well.

ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 390 at 3 (1995) (footnote omitted); *accord* Restatement §131 cmnt. d.

Of course, the best way of identifying a lawyer's client is to examine the relevant engagement letter, the contract that defines the scope of the representation. *See* Wash. RPC 1.2 Comment 6 (scope of representation by a lawyer may be limited by agreement with the client); *Wild Game Ng, LLC v. Wong's Int'l (USA) Corp.*, 2006 U.S. Dist. LEXIS 86913 at 16 (D. Nev. 2006) (disqualification inappropriate where engagement letter limited scope of representation to particular entities). It is undisputed that Avocent understood at the time that it engaged Heller Ehrman in 2004 that the representation did *not* create a blanket attorney-client relationship between Heller Ehrman and each member of Avocent's "corporate family." Gavenman Decl.¶¶10, 11, Ex. B. The engagement letter was directed to Avocent, and unambiguously identifies Avocent as the client. *Id.* The letter was counter-signed by Mr. Saracino on behalf of Avocent. *Id.* Indeed, Mr. Saracino's handwritten correction of the text identifying the client indicates that he signed on behalf of "Avocent Corporation." *Id.* If there were any doubt as to the scope of the representation, it is made clear by the following language in the letter:

> *In representing a client which is an entity, we do not thereby also separately represent affiliates or other constituents of the entity*, nor do we separately represent the owners, officers, directors, founders, managers, members, general

OPPOSITION TO MOTION TO DISQUALIFY     4
HELLER EHRMAN LLP:C06-1711P

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

partners, limited partners or employees of the entity in their individual capacities …We will rely upon you to inform them of this fact where appropriate.

*Id.*, at ¶¶10, 11, Ex. B (emphasis).  Limiting the scope of a representation is a common and accepted practice, particularly between sophisticated corporate clients and large law firms. Aronson Decl. ¶12.  In the face of this plain language, Redmond's claim that it believed it had or has an attorney-client relationship with Heller Ehrman is patently unreasonable.  Moreover, as discussed below, even if Heller Ehrman did have an attorney-client relationship with Redmond, that relationship terminated when Avocent terminated its attorney-client relationship.  RPC 1.7 is inapplicable, and Redmond's motion must therefore be denied.

### 3.    Avocent is Not a Current Client of Heller Ehrman.

RPC 1.7 is also inapplicable because Avocent is not a current client of Heller Ehrman. Notwithstanding Redmond's baseless claims to the contrary, Avocent terminated its relationship with Heller Ehrman shortly after its acquisition of OSA.  In support of this argument, Redmond notes that neither Avocent nor Heller Ehrman has issued a formal termination letter and that Heller Ehrman *may* possess certain vaguely described "Avocent licensing files." Motion at 7:7-9.  Although no formal letter terminating Heller Ehrman's engagement has issued, the maxim that an attorney-client relationship may be inferred from the conduct of the parties applies with equal force to termination of the attorney-client relationship.  *See, e.g., Bohn v. Cody,* 119 Wn. 2d 357, 363 (1992) (existence of attorney-client relationship is question of fact); *Belli v. Shaw,* 98 Wn.2d 569 (1983) (an attorney's employment ends when the client's employment of other counsel becomes inconsistent with the continuation of the attorney-client relationship); *Artmorick Int'l Inc. v. Drustar, Inc.*, 134 F.R.D. 226 (S.D. Oh. 1991) (attorney-client relationship may be terminated by either party by act or deed).

The disqualification analysis in *Artmorick Int'l Inc. v. Drustar, Inc.*, 134 F.R.D. 226 (S.D. Oh. 1991), is instructive because the facts in that case are analogous to those present here.  In that case, the court stated that "the law will imply an end to the relationship where it would be *objectively unreasonable* to continue to bind the parties to each other."  134 F.R.D.

OPPOSITION TO MOTION TO DISQUALIFY          5
HELLER EHRMAN LLP:C06-1711P

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

at 230.  That objective analysis requires "close examination" of the specific facts before the court.  *Id.*  In analyzing the relationship between the parties in that case, the court found the relationship to have been terminated because: (1) there was over *one year* of inactivity; (2) the corporation had not paid a bill and the attorney did not seek payment; (3) the corporation had a need for legal services but sought services from other counsel; (4) the corporation's legal needs included those areas which the attorney had formerly provided services as well as areas where the corporation knew the attorney could provide services; and (5) the attorney did not pursue any further legal work "despite his firm's possession of original documents."  *Id.* at 230-231.  The court characterized the attorney's continued mailing of literature and retention of original papers as "mixed signals" but, ultimately, *ministerial actions or inactions.  Id.* at 231.  The court denied disqualification, holding that "an objective third-party with full knowledge of the corporation's actions would not consider it reasonable for the corporation to insist" that the attorney-client relationship had not terminated.  *Id.*

Here, Heller Ehrman has not sought work from Avocent or been called upon to perform any legal work for Avocent in more than two years.  Gavenman Decl. ¶¶16, 22.  The last date any Heller Ehrman attorney billed time to Avocent intellectual property matters was September 17, 2004, and that attorney disassociated from Heller Ehrman on October 8, 2004.  *Id.*, at ¶16.  In fact, each Heller Ehrman attorney who performed any intellectual property work for Avocent left the firm in 2004 and 2005.  *Id.*, at ¶17.  Further, Avocent transferred all of its corporate work to Wilson Sonsini Goodrich & Rosatti shortly after the OSA post-acquisition matters had been completed.  *Id.*, at ¶¶4, 8, 18.  Contrasting this prolonged period of inactivity with the parties' prior relationship, which involved frequent attorney-client contacts and general corporate counseling, it was reasonable for Heller Ehrman to conclude that the representation of Avocent ended after the OSA acquisition.  *See* Aronson Decl., ¶19 ("[I]n a case like this involving a sophisticated client with frequent and substantial need for legal services who used the attorney for numerous matters as well as general corporate counseling, it is reasonable to conclude that the attorney-client relationship has been terminated after a much shorter period of inactivity.").

OPPOSITION TO MOTION TO DISQUALIFY        6
HELLER EHRMAN LLP:C06-1711P

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

Moreover, Mr. Saracino's May 2005 letter directing Heller Ehrman to transfer all its "patent and patent-related files" to other counsel, Davidson Berquist Jackson & Gowdey, LLP, was far more expansive than suggested in Redmond's Motion. That letter provided for transfer of the following:

> 1. *All* patent and patent-related files and *other property* of Avocent Corporation and its subsidiary OSA Technologies, Inc. … *including without limitation all* patent and trademark application files, attorney work files, collections of prior art, correspondence files and *other files and materials*.
>
> 2. A print-out and an electronic file containing *all items* docketed in Heller's docket system for Avocent, including *all actions due or that are scheduled due for a future date*.
>
> 3. A copy, on floppy disk or CD-Rom, of *all* patent and patent-related documents created for Avocent that are electronically stored on Heller's computer systems, *and any subsequently identified and requested*...
>
> 4. A copy on CD-Rom of *all* e-mail message files relating to patent and patent-related matters that had been maintained by attorneys and employees of Heller.

Gavenmen Decl., at ¶18. (emphasis). The language in Avocent's own letter leaves no room for error, Avocent intended to terminate its brief relationship with Heller Ehrman. Aronson Decl., ¶18. Heller Ehrman certainly understood that Avocent had decided to use other counsel for all matters which on OSA had formally engaged Heller Ehrman. Gavenman Decl. ¶¶11, 18, 19, 22, 23.

Redmond's reliance on *Jones v. Rabanco*, 2006 U.S. Dist. LEXIS 53766, is misplaced. As this Court noted, the attorneys in *Rabanco* not only had ongoing obligations to their client pursuant to a settlement agreement at issue, but they were also potential witnesses in the second representation. 2006 U.S. Dist. LEXIS 53766 at 3-4. Here, Heller Ehrman has no such ongoing service obligations to Avocent and there is no conceivable basis upon which former Heller Ehrman lawyers, let alone current ones, might be called as witnesses. Looking at all the circumstances present, an objective third-party with full knowledge of Avocent's actions would not consider it reasonable for Avocent to insist that the attorney-client relationship with Heller Ehrman has not terminated. Aronson Decl., ¶31.

OPPOSITION TO MOTION TO DISQUALIFY          7
HELLER EHRMAN LLP:C06-1711P

**Heller Ehrman** LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

**4.     To the Extent That A Conflict Exists, Avocent Waived Any Conflict.**

Even if the Court concludes that there was an attorney-client relationship between Heller Ehrman and  Redmond, and that this relationship was not terminated, Avocent prospectively waived such conflicts when it approved the Heller Ehrman engagement letter. The letter, by its plain terms, provides that Heller Ehrman is "not precluded from representing in matters not substantially related to this engagement a client adverse to Avocent, whether in a business transaction, in litigation or otherwise."  Gavenman Decl., ¶10, Ex. B.  Redmond does not advance any argument in its Motion that the provisions limiting the scope of Heller Ehrman's engagement with Avocent and waiving potential future conflicts are inappropriate; indeed, any reference to the engagement letter or its terms is conspicuously absent from Redmond's Motion.  This is unsurprising given the widespread acceptance of such waivers, particularly in circumstances, as those present here, "involving clients sophisticated in the use of lawyers…and advised by independent counsel, such as by inside legal counsel." Restatement (Third) of the Law Governing Lawyers §122, comment g, at 275 (2000); *see also Zador Corp. N.V. v. Kwan*, 31 Cal.App.4th 1285, 1301 (1995); *see also* Aronson Decl. ¶21. Therefore, even if a conflict did exist, Avocent has waived any arguments relating to the conflict.

**B.     Heller Ehrman's Representation of Rose in this Action is Not Precluded by RPC 1.10(b).**

Redmond argues in its Motion that even if Avocent is properly understood to be a former client of Heller Ehrman, RPC 1.10(b) nonetheless requires the firm's disqualification from this action because confidential information relating to certain aspects of its parent company's KVM technology *may* have been disclosed to attorneys who were formerly associated with Heller Ehrman and such information *may* still be in Heller Ehrman's possession.  Motion at 9-10.  This alternative argument is equally without merit.  Under RPC 1.10(b), a firm is not prohibited from representing a client where lawyers who previously represented the former client have terminated their association with the firm *unless* the matters

are substantially related *and* lawyers remaining at the firm possess secrets or confidences of the former client.  Both conditions must be present to justify the drastic remedy of disqualification.  Because Redmond cannot meet its burden on either point, RPC 1.10(b) is inapplicable here.

### 1.    No Substantial Relationship Exists Between Heller Ehrman's Prior Representation of Avocent and its Current Representation of Rose.

Redmond bears a heavy burden to show how the former OSA/Avocent matters related to the current litigation, and how information from the former representation would help Rose in the present case. *Foster Poultry*, 2005 U.S. Dist. LEXIS 39648 at 20-21.  "Because disqualification motions are often tactically motivated and tend to derail efficient progress of litigation, the party seeking disqualification has a *heavy burden* and must satisfy a *high standard of proof*."  *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2nd Cir. 1983) (emphasis); *see also  Laker Airways Ltd. v. PanAmerican World Airways*, 103 F.R.D. 22, 38(D.D.C. 1984) ("In light of the serious nature and consequences of such relationships, the court has duty to examine them with precision and care.").  Courts evaluate three factors in determining whether matters are substantially related: (1) factual similarities in the two representations; (2) legal similarities in the two representations; and (3) nature and extent of the individual attorneys' involvement in the previous case. *Foster Poultry*, 2005 U.S. Dist. LEXIS 39648 at 11-12 (citations omitted); *see also Jessen v. Hartford Casualty Ins. Co.*, 11 Cal.App. 4th 698, 712 (2003) (matters will not be substantially related unless information from the former representation is material to the present one given the factual and legal issues).  Each of these factors weighs against a finding of substantial relationship; Redmond has failed to carry this "heavy burden."

Redmond's own arguments regarding the similarity of the matters are, at most, attenuated.  Redmond alleges that Heller Ehrman's 2004 licensing services for Avocent which by "would have" implicated a "family of patents" related to KVM technology.  To conclude that the matters are sufficiently related to warrant disqualification requires a finding that the licensing is actually related to Redmond's allegations of infringement of specific patents

OPPOSITION TO MOTION TO DISQUALIFY                     9
HELLER EHRMAN LLP:C06-1711P

which *were not* at issue—indeed, one of the patents had not even issued—in 2004.  Motion at 2:22-25.  Redmond essentially argues that the two representations are substantially related because: (1) both representations share a common area of law; (2) both matters involve KVM technology; and (3) both matters involve Avocent or one of its subsidiaries.  These areas of resemblance are both general and superficial; specific similarities between this action and the licensing advice given to Avocent in 2004 are entirely absent.  Redmond does not argue that the patents at issue in this action were *actually* at issue in the 2004 licensing matters.  Redmond does not argue that Heller Ehrman's work in 2004 *actually* included the patents here in dispute.  *See* Motion at 2:17-25.

The standard of disqualification urged by Redmond and Avocent would effectively proscribe any law firm that does any work for any one of Avocent's numerous subsidiaries from ever again participating in a matter involving any of them.  "The proscriptions of the ethical rules are not that draconian."  *Laker Airways*, 103 F.R.D. at 40.  Such an approach "would effectively give clients veto power over their former attorneys' ability ever to represent an opponent" in any other matter.  *Id.* at 40-41.  For that reason, Redmond's arguments must be rejected.

### 2.   No Lawyer Remaining at Heller Ehrman Has Confidential Information of Avocent.

Even if the two representations are similar or substantially related, Heller Ehrman should still not be disqualified because *no remaining lawyers* have confidential information of Avocent.  Gavenman Decl. ¶20, 21; Terwilliger Decl. ¶7.  *All* the attorneys who worked on Avocent matters are no longer associated with Heller Ehrman, *all* Avocent's original files were transferred to other counsel, *all* retained files have been stored off-site since 2005 (and appear to comprise administrative materials such as invoices and copies of executed agreements).  *Id.* RPC 1.10(b)'s imputed disqualification provision is based on a presumption that attorneys who work together share secrets and confidences.  *Amgen, Inc. v. Elanex Pharmaceuticals, Inc.,* 160 F.R.D. 134, 140 (W.D. Wash. 1994).  However, this presumption is rebuttable by evidence that remaining lawyers are not tainted.

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

Here, there is no taint because the Declaration of Molly A. Terwilliger establishes that neither she, nor any other attorney working on the Rose matter, has any confidential information.  Terwilliger Decl. ¶¶7, 8.  Nor will they be able to obtain such information, because each attorney who worked on Avocent's three discreet intellectual property matters in 2004 is no longer associated with Heller Ehrman.  Gavenman Decl. ¶17.  Further, all remaining Avocent-related files in Heller Ehrman's possession were placed in off-site storage, the normal procedure followed when an engagement has terminated.  *Id*., at ¶19.  Although Mr. Gavenman was the responsible shareholder on the OSA and Avocent accounts, he took no part in the intellectual property matters, he billed no time to these matters, and his overall role was essentially limited to that of an administrator on the accounts.  *Id.*.  His role was peripheral to the licensing work performed for Avocent.  *See* Aronson Decl. ¶28.

Under these circumstances, Redmond has not met its heavy burden of showing Heller Ehrman's work for OSA and Avocent is substantially related to the present action or that any attorneys remaining at Heller Ehrman have confidential information of Avocent related to the issues in this action.  Disqualification of Heller Ehrman must be denied.

## IV.   CONCLUSION

Disqualification motions are subject to strict judicial scrutiny given the potential for abuse and are rightly viewed "with extreme caution since they can be misused as techniques of harassment and tend to deprive a party of representation of their choice."  *Foster Poultry Farms v. Conagra Foods Refrigerated Foods Co., Inc.* 2005 U.S. Dist. LEXIS 39648 at 9 (E.D. Cal. 2005).  Viewing these facts with appropriate caution, Redmond's Motion must be denied.  No conflict of interest exists here.  Heller Ehrman has never had an attorney-client relationship with Redmond, and Redmond's parent, Avocent, terminated its brief relationship with Heller Ehrman more than two years ago.  Redmond has not met its heavy burden to demonstrate a substantial relationship between Heller Ehrman's brief and limited representation of Avocent three years ago involving different patents and parties not present in

OPPOSITION TO MOTION TO DISQUALIFY
HELLER EHRMAN LLP:C06-1711P

11

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

1  this action, and Redmond's patent infringement claims in this action.  This Court should,

2  therefore, deny Redmond's motion to disqualify Heller Ehrman.

3  April 16, 2007                          Respectfully submitted,

4

5                                          HELLER EHRMAN LLP

6

7                                          By: s/Molly A. Terwilliger
8                                          Molly A. Terwilliger, WSBA #28449
                                           Heller Ehrman LLP
9                                          701 Fifth Avenue, Suite 6100
                                           Seattle, WA  98104
10                                         Tel:  (206) 447-0900
                                           Fax:  (206) 447-0849
11                                         E-mail:  molly.terwilliger@hellerehrman.com

12                                         Michael S. Dowler
13                                         Thomas L. Casagrande
                                           Brian L. Jackson
14                                         Jeffrey J. Phillips
                                           Howrey LLP
15                                         1111 Louisiana, 25th Floor
16                                         Houston, TX  77002
                                           Tel:  (713) 787-1400
17                                         E-mail:  dowlerm@howrey.com
18                                                  casagrandet@howrey.com
                                                    jacksonb@howrey.com
19                                                  phillipsj@howrey.com

20  SE 2206832 v5
    4/16/07 6:37 PM (44109.0001)
21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISQUALIFY                12
HELLER EHRMAN LLP:C06-1711P

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900