1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AVOCENT REDMOND CORP.,

                                    Plaintiffs,

v.

ROSE ELECTRONICS, INC., et al.,

                                    Defendants.

No. CV06-1711MJP

ORDER GRANTING IN PART AND
DENYING IN PART AVOCENT'S
MOTION FOR PROTECTIVE
ORDER AND DENYING
DEFENDANTS' CROSS-MOTION
FOR PROTECTIVE ORDER

12
13
14
15
16
17
18
19
20
21

        This matter comes before the Court on the parties cross-motions regarding entry of a
protective order.  This is a patent case involving Keyboard-Video-Mouse (KVM) switch technology.
The parties have reached agreement on the majority of a protective order, but disagree regarding
three provisions in the order.  Plaintiff Avocent Redmond Corp. has moved for entry of its version of
the protective order. (Dkt. No. 57.)  Defendants oppose Plaintiff's motion and collectively filed a
cross-motion requesting that the Court adopt Defendants' version of the protective order. (Dkt. No.
70.)  Having considered Avocent's motion, Defendants' opposition and cross-motion, Avocent's
reply (Dkt. No. 75), Defendants' reply (Dkt. No. 81), and Avocent's surreply (Dkt. No. 82), the
Court GRANTS IN PART and DENIES IN PART Avocent's motion for protective order and
DENIES Defendants' cross-motion for protective order.

22

**Discussion**

23
24
25
26

        Under Fed. R. Civ. P. 26(c), the Court, upon a motion and a showing that the parties have
conferred in good faith, may issue a protective order.  In this case, the parties have conferred and
agree on a majority of the proposed protective order.  But three areas of disagreement remain: (a) the
definition of information that may be designated as "Attorneys Eyes Only"; (b) the amount of time

1   after a deposition that a party has to designate the testimony as confidential or Attorneys Eyes Only;

2   and (c) whether outside counsel that receives Attorneys Eyes Only information should be precluded

3   from any involvement in patent prosecution regarding KVM switch technology before any patent

4   office worldwide for a period ending two years after the conclusion of this case and all subsequent

5   appeals (Defendants' proposal).

6   **A.      Definition of "Attorneys Eyes Only" Information**

7            Both protective orders proposed by the parties provide that proprietary information can be

8   designated under one of two confidentiality levels: the lower tier of "Confidential" or the higher tier

9   of "Attorneys Eyes Only."  In their initial motions, the parties dispute what information is properly

10  designated as Attorneys Eyes Only.  Avocent's proposed definition includes the plain text in the

11  following, with Defendants' proposed additions and deletions to Avocent's proposal indicated in bold

12  text:

13           Proprietary Information relating to highly sensitive financial information, including but not
         limited to, customer identification, **sales and cost information**, sales prices to specific
14       customers, profit margins, **trends, projections, current and** prospective marketing
         strategies, **or other highly sensitive financial information not yet publicly disclosed**,
15       and highly sensitive technical information, including but not limited to, product design and
         development materials **relating to products not yet for sale or released to the public,**
16       **schematics, gerber files, layouts,** source code, **CAD drawings, specifications,** or other
         highly sensitive, **trade secret** technical information not yet publicly disclosed, may be
17       designated as ATTORNEYS EYES ONLY.

18           The parties appear to have resolved this issue through their briefing.  Both parties prefer a

19  "document-by-document" determination of confidentiality.  In their reply, Defendants agree with

20  Avocent's approach as explained in the briefing.  Because the parties appear to be in agreement, but

21  because Avocent has not had an opportunity to respond to Defendants' reply, the Court adopts

22  Avocent's proposed definition of "Attorneys Eyes Only" information, which states as follows:

23           Proprietary Information relating to highly sensitive financial information, including
         but not limited to, customer identification, sales prices to specific customers, profit
24       margins and prospective marketing strategies, and highly sensitive technical
         information, including but not limited to, product design and development materials
25       relating to products not yet for sale or released to the public, source code, or other
         highly sensitive, trade secret technical information not yet publicly disclosed, may be
26       designated as ATTORNEYS EYES ONLY.

### B.   Amount of Time Necessary For Designating Deposition Transcripts

The parties cannot agree on the amount of time a party or non-party has to designate a deposition transcript as either Confidential or Attorneys Eyes Only.  Avocent proposes that the parties have five days from the day the transcript becomes available to designate the transcript (i.e., when the court reporter sends the transcript to the parties).  Defendants agree to a five day waiting period, but argue that it should be triggered when the court reporter notifies the parties that the transcript is available.  The Court orders the following resolution: a party or third party may make its designation within five days of <u>receipt</u>, either by mail or email, of the deposition transcript.

### C.   Prohibition on Outside Counsel Who Receive Attorneys Eyes Only Information From Involvement in Patent Prosecution for Two Years

Defendants propose an additional provision in the protective order that would bar any person who receives access to Attorneys Eyes Only information from any involvement in prosecuting any patent involving KVM switch technology for two years after the conclusion of this litigation, including all appeals. (<u>See</u> Plf.'s Mot., Ex. 2.)  Defendants argue that this prohibition is necessary to prevent Avocent's counsel allowed access to Defendants' highly-sensitive KVM switch design information from inadvertently using that information while prosecuting new KVM patents for Avocent.  Avocent opposes the access prohibition.

Fed. R. Civ. P. 26(c) authorizes the court to protect a party from "undue burden or expense" in discovery by directing that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."  The party seeking the protective order carries the burden of showing good cause for its issuance. <u>See</u> Fed. R. Civ. P. 26(c); <u>Jepson, Inc. v. Makita Elec. Works, Ltd.</u>, 30 F.3d 854, 858 (7th Cir. 1994).

The scope of protective orders seeking to limit access to attorneys to confidential information is governed by the principles set down by the Federal Circuit in <u>U.S. Steel Corp. v. United States</u>, 730 F.2d 1465 (Fed. Cir. 1984) (holding that court erred when it prohibited access to confidential information based on attorney's status as "in-house" counsel and requiring case-by-case and attorney-by attorney determination).  As explained by the Federal Circuit, the policy underlying a restriction on

1   counsel's access to confidential materials is the concern that counsel might inadvertently disclose the

2   confidential material learned during the course of litigation. See id. at 1468.  The competing interests

3   to be evaluated in determining the outcome of such a dispute are one party's right to broad discovery

4   and the other party's ability to protect its confidential materials from misuse by competitors. See

5   Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992).  The inquiry focuses

6   on whether counsel can be a deemed a "competitive decision-maker," which the Federal Circuit says

7   is shorthand for "a counsel's activities, association, and relationship with a client that are such as to

8   involve counsel's advice and participation in any or all of the client's decisions (pricing, product

9   design, etc.) made in light of similar or corresponding information about a competitor." U.S. Steel,

10  730 F.2d at 1468 n.3.  Whether counsel is "in-house" or "retained" is not dispositive on the issue:

11  "denial or grant of access . . . cannot rest on a general assumption that one group of lawyers is more

12  likely or less likely inadvertently to breach their duty under a protective order." See id. at1468.  In

13  addition to determining whether an attorney is a competitive decision-maker, courts must also

14  consider whether denying that attorney access to confidential material would work a substantial

15  hardship on that attorney's client. Id.

16          In Brown Bag, the Ninth Circuit upheld the magistrate judge's decision to issue a protective

17  order that denied access to plaintiff's in-house counsel to defendant's trade secret information.  The

18  court noted that the magistrate judge had held a comprehensive evidentiary hearing at which

19  defendant's counsel described the extreme sensitivity of the trade secrets at issue and the potential

20  damage to defendant should the trade secrets inadvertently become subject to misuse by its

21  competitor, plaintiff Brown Bag. Brown Bag, 960 F.2d at 1470-71.  Brown Bag's in-house counsel

22  admitted that he was responsible for advising his employer on a gamut of legal issues, including

23  contracts, marketing, and employment. Id. at 1471.  Thus, Brown Bag's in-house counsel was

24  involved in the kind of "competitive decisionmaking" that warrants a limitation on disclosure under

25  the U.S. Steel analysis.

26

ORDER - 4

A number of district courts have applied the U.S. Steel / Brown Bag analysis in the context of patent cases.  Two courts in this district have denied protective orders that would have prohibited revealing confidential and proprietary information to plaintiffs' in-house counsel.  In both those cases, the courts based their decision on their factual determination that in-house counsel was not involved in competitive decisionmaking. See Amgen, Inc. v. Elanex Pharmaceuticals, Inc., 160 F.R.D. 134, 139 (W.D. Wash. 1994); Fluke Corp. v. Fine Instruments Corp., Case No. C94-573C, 1994 U.S. Dist. LEXIS 16286, at *14-16 (W.D. Wash. October 6, 1994).  However, neither of these courts addressed the precise question of whether counsel who prosecutes patents on behalf of a client is a "competitive decisionmaker."

That question has been answered affirmatively by a number of courts.  In Motorola, Inc. V. Interdigital Technology Corp., the District of Delaware issued a protective order that prohibited defendant's attorneys who received confidential information from plaintiff from prosecuting any patent application for defendant relating to the subject matter of the patents in suit during the pendency of the litigation and for one year after, including appeals. Case No. 93-488LON, 1994 U.S. Dist. LEXIS 20714, at *17-18 (D. Del. Dec. 19, 1994).  The court noted that the risk of inadvertent disclosure was high and that imposition of the protective order would pose little hardship to defendants, because the affected law firm had not been prosecuting these patents for a long period of time. Id. at 14-16.

Likewise, in Mikohn Gaming Corp. v. Acres Gaming, Inc., CV-S-97-1383-HDM(LRL), 1998 U.S. Dist. LEXIS 22251 (D. Nev. April 23, 1998), the District of Nevada issued a protective order denying access to confidential information to one of plaintiff's law firms where that firm acted as plaintiff's patent prosecutor and patent litigator.  Relying on U.S. Steel, Brown Bag, and Motorola, the court concluded that it would be impossible for counsel to compartmentalize the confidential information received: "The legal and factual components of [counsel's] advice regarding complex technology are so intertwined as to be inseparable . . . it is unrealistic to expect that his knowledge of [defendant's] secret technology would not or could not influence the nature of his advice to

1    [plaintiff]." <u>Mikohn</u>, 1998 U.S. Dist. LEXIS 22251, at * 12.  After conducting factual inquiries, other

2    courts have issued similar protective orders either denying access to confidential information to patent

3    prosecutors or prohibiting those with access to that information from prosecuting patents related to

4    the underlying suit for one to two years. <u>See</u> <u>In re Papst Licensing</u>, MDL No. 1298, 2000 U.S. Dist.

5    LEXIS 6374 (E.D. La. May 4, 2000) (one year ban on prosecuting patents related to patent at issue

6    in case); <u>Interactive Coupon Mktg. Group, Inc. v. H.O.T! Coupons, LLC</u>, No. 98-C-7408, 1999 U.S.

7    Dist. LEXIS 12437 (N.D. Ill. August 9, 1999) (refusing to adopt per se rule regarding patent

8    prosecutors, but inquiring "whether the firm's involvement in developing a patent prosecution

9    strategy will be informed by such information to the competitor's detriment").

10        In contrast, a number of district courts have rejected the <u>Motorola</u> approach and denied

11   protective orders that would exclude outside patent counsel from accessing information.  Courts have

12   criticized <u>Motorola</u> for equating patent prosecution activities with competitive decisionmaking. <u>See</u>

13   <u>Sibia Neruosciences, Inc. v. Cadus Pharm. Corp.</u>, Case No. 96-1231-IEG, 1997 U.S. Dist. LEXIS

14   24130, at *19, 26 (S.D. Cal. July 15, 1997); <u>see also</u> <u>AFP Advanced Food Prods. LLC v. Snyder's of</u>

15   <u>Hanover Mfg., Inc.</u>, No. 05-3006, 2006 U.S. Dist. LEXIS 426, *7 (E.D. Penn. 2006) (refusing to

16   include provision in protective order because "[b]arring [plaintiff's] attorneys from prosecuting

17   similar patents for two years following this suit, without some tangible reason or good cause other

18   than the general threat of inadvertent misuse of discovered materials, is the exact type of overly broad

19   and generalized fear rejected in . . . <u>U.S. Steel</u>"); <u>Pergo, Inc. v. Faus Group, Inc.</u>, No. 5:05-cv-50-

20   FL(1), 2005 U.S. Dist. LEXIS 40601, *19-20 (E.D. N.C. Sept. 20, 2005) (where defendants

21   presented no evidence in support of their assertion that attorney was key influence and involved in

22   plaintiff's decision making process, court refused to prohibit him from accessing information solely on

23   basis that he has prosecuted patents for plaintiff).

24        <u>U.S. Steel</u> and <u>Brown Bag</u> require a case-by-case analysis of whether an attorney should be

25   excluded from access to certain information.  "[T]he factual circumstances surrounding each

26   individual counsel's activities, association, and relationship with a party, whether counsel be in-house

or retained, must govern any concern for inadvertent or accidental disclosure." U.S. Steel, 730 F.2d at 1468.  Avocent is represented in this litigation by four attorneys from two different law firms. Attorneys James Berquist, J. Scott Davidson, and Donald Jackson, from the Virginia law firm of Davidson, Berquist, Jackson & Gowdey, have appeared on Avocent's behalf.  Local counsel is John Knox from the law firm of Williams, Kastner, & Gibbs.  The Davidson Berquist firm represented Avocent in the prosecution of its most recently issued asserted patent. (Moore Decl. ¶ 3, Ex. 2.) Defendants identify attorney Michael Casey as a patent prosecutor at Davidson Berquist who has represented Avocent in the prosecution of its most recently issued asserted patent.  Mr. Casey has not appeared in this action.  Avocent states in its briefing that the protective order would affect Mr. Davidson, who is a long-time patent prosecutor for Avocent and trial counsel in this action. (See Davidson Decl. ¶ 3.)  He has submitted a declaration in which he states that he has handled, and continues to handle, dozens of patent applications directed to the field of KVM switches for Avocent. (Id.)  He has also represented Avocent in three patent cases involving KVM switches. (Id.)

Defendants argue that patent prosecution activities are "competitive decisionmaking" activities because the "objective of such activities is the issuance of patents designed to enjoin Defendants' products from the marketplace." (Defs.' Reply at 4.)  Defendants are particularly concerned that Avocent's attorneys will use knowledge of Defendants' technology when they prosecute a continuation patent.  Claims on a continuation patent are retroactively dated to the date of the original patent.  Avocent disputes the validity of this concern and points out that it is limited in its continuation applications to claimed subject matter disclosed in the original patent.[1]  See 35 U.S.C. § 120.

_____

[1]     Avocent also moves to strike two arguments made by Defendants in their reply.  These arguments relate to patent prosecutors' duty of candor in front of the Patent Office and whether Avocent could draft its patent claims to cover Defendants' products in the absence of detailed confidential information about those products.  Because these arguments do not affect the Court's analysis on the question of whether the protective order should issue, the motion to strike is moot.

1    Avocent raises several other arguments against the proposed prohibition.  Avocent argues that

2  Defendants have not shown good cause for the access prohibition.  Indeed, Defendants only make the

3  vague argument that "potentially devastating consequences to Defendants' businesses" would result

4  without exclusion of patent prosecution counsel.  Avocent also argues that exclusion of Avocent's

5  patent prosecution counsel would work a substantial hardship on Avocent.  It appears that lawyers at

6  the Davidson Berquist firm have represented Avocent Corp. in both patent prosecution and litigation

7  matters since the formation of Avocent in mid-2000. (Plf.'s Mot. at 8).  As Avocent explains,

8  "Avocent and its parent have invested significant amounts of time and money educating its patent

9  counsel on the technology involved in the present case, the legal issues likely to be litigated here, the

10  industry's use of the same or similar technology, and the evolution of the market for the patented

11  KVM switches." (Id.)  Mr. Davidson, who has appeared on behalf of Avocent here, has litigated on

12  behalf of Avocent in related cases involving the same patent family and has prosecuted one of the

13  patents at issue here.  As he explains, he is intimately familiar with the issues to be presented in this

14  litigation.

15    Based on the relevant case law, and the evidence offered here, the Court rejects Defendants'

16  proposed provision in the protective order.  Defendants have not met their burden of showing good

17  cause for entry of this provision.  Defendants have not offered any evidence that suggests that Mr.

18  Casey, Mr. Davidson, or any other of Avocent's patent prosecutors advise Avocent in its

19  "competitive decisionmaking."  Even though a number of courts have stated that the work of a patent

20  prosecutor inherently involves advising the client in it competitive decisionmaking, those courts are

21  not binding here, and U.S. Steel counsels that status as a patent litigator alone is not enough to show

22  advice and participation in competitive decisionmaking.  In addition, it appears that the exclusion

23  would work a substantial hardship on Avocent because its litigator in this case is familiar with

24  litigating these patents and has previously prosecuted KVM switch patents for Avocent. (Davidson

25  Decl. ¶ 3.)  The Court is unwilling to preclude lawyers from litigating here or in front of the patent

26  office on a vague and generalized threat of future inadvertent misuse of discovered materials.  The

Court therefore denies Defendants' request that the Court enter a provision in the protective order precluding counsel that receives Attorneys Eyes Only information from any involvement in patent prosecution involving KVM switch technology.

### Conclusion

The parties have reached agreement on the majority of a protective order, but disagree regarding three provisions. The Court GRANTS IN PART and DENIES IN PART Avocent's proposed protective order and DENIES Defendants' proposed protective order. The Court adopts Avocent's proposed definition of "Attorneys Eyes Only." The Court orders that a party or third party may make its designation within five days of receipt, either by mail or email, of the deposition transcript. And the Court rejects Defendants' proposal that the Court enter a provision in the protective order precluding counsel that receives Attorneys Eyes Only information from any involvement in patent prosecution involving KVM switch technology for two years after the conclusion of this case and all subsequent appeals. The parties shall file a revised proposed protective order that is consistent with this order no later than June 4, 2007, for the Court's signature.

The clerk is directed to send a copy of this order to all counsel of record.

Dated this 24th day of May, 2007.

Marsha J. Pechman
United States District Judge