1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
9   AVOCENT REDMOND CORP.,               )
                                        )        No. C06-1711-MJP
10                   Plaintiff,          )
                                        )        ORDER GRANTING PLAINTIFF'S
11      v.                               )        MOTION TO DISQUALIFY
                                        )        HELLER EHRMAN LLP
12  ROSE ELECTRONICS, *et al.*,          )
                                        )
13                   Defendants.         )
_____)

14                          **I.  INTRODUCTION**

15          This matter comes before the Court under Local General Rule 8(b).  On April 5, 2007,

16  plaintiff Avocent Redmond Corp. ("Redmond") filed a motion to disqualify Heller Ehrman LLP

17  from representing defendants Rose Electronics, Peter Macourek and Darioush "David" Rahvar

18  in this matter (hereinafter "defendants").  <u>See</u> Dkt. #58.  On May 1, 2007, this motion was

19  referred by the Honorable Marsha J. Pechman, United States District Judge, to the Chief Judge

20  for review.  <u>See</u> Dkt. #83 (Minute Order).  Therefore, plaintiff's motion is properly before this

21  Court for consideration.

22          In its motion, plaintiff seeks disqualification of Heller Ehrman under rules 1.7 and 1.10 of

23  the Washington Rules of Professional Conduct ("RPC") because in 2004 Heller Ehrman

24  represented plaintiff's sister corporation, OSA Technologies, Inc. and its affiliates.  In response,

25  defendants assert that Heller Ehrman should not be disqualified because:  (1) Heller Ehrman

26

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP

1  never represented plaintiff Redmond, (2) neither plaintiff nor its affiliates are current clients of

2  Heller Ehrman, (3) any conflict with Heller Ehrman's representation of defendants in this matter

3  was waived, and (4) Heller Ehrman's work in 2004 was not substantially related to the issues in

4  this litigation.  For the reasons set forth below, the Court grants plaintiff's motion to disqualify

5  Heller Ehrman.[1]

6  ## II. DISCUSSION

7  ### A. Background

8     In April of 2004, Open Source Asia Technologies, Inc. ("OSA") was acquired by Avocent

9  Corporation.  See Dkt. #58-3 (Saracino Decl.) at ¶2; Dkt. #67 (Gavenman Decl.) at ¶8.  Before

10  OSA's merger with Avocent Corporation, Heller Ehrman provided general corporate legal

11  counseling for OSA and Heller Ehrman represented OSA in the merger.  See Dkt. #67 at ¶6;

12  Dkt. #58 at ¶2.  After the merger of OSA and Avocent Corporation in April of 2004, Heller

13  Ehrman continued representation of OSA in "limited post-merger matters," consisting of

14  "primarily intellectual property transactions and commercial licensing."  See Dkt. #67 at ¶7.  On

15  or about April 27, 2004, Heller Ehrman sent OSA a legal services agreement indicating that

16  Heller Ehrman represented "OSA Technologies, Inc., a wholly owned subsidiary of Avocent

17  Corporation, and its affiliates" in these post-acquisition matters.  Id. at Ex. A.  Plaintiff

18  Redmond and OSA are sister corporations because both are wholly-owned by Avocent

19

20     [1]  On May 16, 2007, plaintiff filed a supplemental brief contending a newly discovered conflict

21  also justifies disqualification of Heller Ehrman.  See Dkt. #87.  Plaintiff claims that its former trial counsel
    from a previous patent litigation case, Mr. Alan Blankenheimer, is now a member of Heller Ehrman.

22  Plaintiff asserts that this former case, Apex PC Solutions Inc. v. Rose Elecs., et al. (No. C98-245TSZ),
    involved the same "patent family" at issue in this case and that Mr. Blankenheimer has not been properly

23  screened by Heller Ehrman.  In opposition, defendants contend that Mr. Blankenheimer has been properly
    screened under RPC 1.10(e) and Washington case law.  See Dkt. #100.  The Court, however, does not

24  need to reach the issues raised in the supplemental brief and response because as set forth below, it
    concludes that Heller Ehrman should be disqualified from this matter based on the circumstances set forth

25  in plaintiff's motion for disqualification.

26

Corporation.  See Dkt. #11 at ¶1 ("Plaintiff, Avocent [Redmond Corporation] is . . . a wholly-owned subsidiary of Avocent Corporation"); Dkt. #58-3 at ¶2 ("As a result of the acquisition transactions, OSA became a wholly-owned subsidiary of Avocent Corporation, and thus, a sister corporation to Avocent Redmond.").  Heller Ehrman has not billed any time on OSA post-acquisition intellectual property matters since September 17, 2004.  See Dkt. #67 at ¶22.

On January 16, 2007, plaintiff filed an amended complaint claiming that defendants have infringed three of plaintiff's patents.  See Dkt. #11.  On February 7, 2007, Heller Ehrman entered an appearance in this matter on behalf of defendants.  See Dkt. #17.  On April 5, 2007, defendants filed the present motion claiming that Heller Ehrman's 2004 representation of OSA in post-acquisition intellectual property licensing matters is in conflict with its representation of defendants in this litigation and therefore Heller Ehrman should be disqualified.

**B.    Discussion**

"In determining whether an attorney's representation of a particular client violates the attorney's ethical responsibilities, the Court first refers to the local rules regulating the conduct of members of its bar."  United States v. Titan Pac. Constr. Corp., 637 F. Supp. 1556, 1560 (W.D. Wash. 1986) (citing Paul E. Iacono Structural Engineer, Inc. v. Humphrey, 722 F.2d 435, 439 (9th Cir. 1983).

Local General Rule 2(e), "Standards of Professional Conduct," states:

> In order to maintain the effective administration of justice and the integrity of the Court, attorneys appearing in this District shall be familiar with and comply with the following materials ("Materials") . . . (2) the Washington Rules of Professional Conduct, as promulgated, amended and interpreted by the Washington State Supreme Court (the "RPC"), and the decisions of any court applicable thereto; . . . [i]n applying and construing these Materials, this Court may also consider the published decisions and formal and informal ethics opinions of the Washington State Bar Association, the Model Rules of Professional Conduct of the American Bar Association and Ethics Opinions issued pursuant to those Model Rules, and the decisional law of the state and federal courts.

The Court has broad discretion to interpret and apply this local rule.  Miranda v. S. Pac. Transp. Co., 710 F.2d 516, 521 (9th Cir. 1983) ("District courts have broad discretion in

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP          -3-

1   interpreting and applying their local rules.").

2       In its motion, plaintiff seeks disqualification of Heller Ehrman under both RPC 1.7 and

3   1.10(b).  Determining whether a conflict exists under either rule, however, is dependant on

4   whether plaintiff Redmond is considered a client or former client of Heller Ehrman.

5   Accordingly, the Court first considers the threshold inquiry of whether Redmond is, or was,

6   Heller Ehrman's client.

7       **1.      Is, or was, plaintiff Redmond a client of Heller Ehrman?**

8       Determining the existence of an attorney-client relationship is a fact-based inquiry.  <u>See</u>

9   <u>Bohn v. Cody</u>, 119 Wn.2d 357, 363 (1992).  "The existence of the relationship "'turns largely on

10  the client's subjective belief that it exists.'  The client's subjective belief, however, does not

11  control the issue unless it is reasonably formed based on the attending circumstances, including

12  the attorney's words or actions."  <u>Id.</u> (quoting <u>In re McGlothlen</u>, 99 Wn.2d 515, 522 (1983)).

13      Defendants assert that "Heller Ehrman has <u>never</u> had an attorney-client relationship with

14  Redmond[.]"  Response at 3 (emphasis in original); Dkt. #67 at ¶23 ("Redmond has never been a

15  client of Heller Ehrman.").  In contrast, plaintiff Redmond believes that Heller Ehrman did

16  represent it.  <u>See</u> Reply at 3 ("<u>Heller represented OSA's affiliates, including Avocent</u>

17  <u>Redmond</u>") (emphasis added).  In order to be controlling, however, plaintiff's belief must be

18  reasonably formed based on Heller Ehrman's words or actions.

19      Defendants assert that the inquiry of whether there is an attorney-client relationship in

20  this case should begin with a review of the engagement letter.  <u>See</u> Response at 4 ("Of course,

21  the best way of identifying a lawyer's client is to examine the relevant engagement letter, the

22  contract that defines the scope of the representation."); Dkt. #68 (Aronson Decl.) at ¶11 ("This

23  factual analysis [of whether an attorney-client relationship exists] typically begins with the

24  relevant engagement agreement.  The engagement agreement is the basic contract with the client

25  and its terms are accorded substantial weight in determining the scope of the relationship.").

26  The Court agrees.  Accordingly, the Court initiates its analysis of whether Redmond had an

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP        -4-

attorney-client relationship with Heller Ehrman by examining the relevant engagement agreement.

On or about April 27, 2004, Jon Gavenman, a Heller Ehrman shareholder, prepared and sent a "Legal Services Agreement" to Mr. Mark Lee, the president of OSA. See Dkt. #67, Ex. A. This agreement, which Mr. Gavenman signed on behalf of Heller Ehrman states:

> I am writing to confirm that this firm has been engaged to represent OSA Technologies, Inc., a wholly owned subsidiary of Avocent Corporation, and its affiliates ("you" or the "Company"), in connection with its general corporate matters. The purpose of this letter and Attachments is to outline the basic terms of our engagement. Although we would prefer to confirm our engagement in a less formal manner, we have found that the attorney/client relationship is enhanced by a mutual understanding of our services and fee arrangements.

Id. In the first sentence of this agreement, the client is expressly identified as "OSA Technologies, Inc., a wholly owned subsidiary of Avocent Corporation, and its affiliates."[2] Further confirming this client identity, is the agreement's client-signature line, which states:

> SO AGREED.
> OSA Technologies, Inc.,
> a wholly owned subsidiary of Avocent Corporation,
> and it's [sic] affiliates

Id. (emphasis added).[3] Black's Law Dictionary defines "affiliate" as a "subsidiary, parent, or

---

[2] Had Heller Ehrman wanted to limit the scope of its representation, it could have done so by expressly limiting the OSA affiliates that it was agreeing to represent rather than broadly agreeing to represent all of them. As one scholar cited by defendant's expert states, "The lack of a per se disqualification rule does not mean that the corporate family would be unable to impose such a rule. The law firm and client, in the initial engagement letter, could always agree to treat some or all members of the corporate family as a single entity, or as separate entities." Ronald D. Rotunda, Conflicts Problems When Representing Members of Corporate Families, 72 Notre Dame L. Rev. 655, 687-88 (1997); see Dkt. #68 at ¶8. Furthermore, the conflict at issue here could have been discovered earlier if Heller Ehrman had listed "OSA . . . and its affiliates" as the client in its electronically-maintained conflicts database.

[3] In his summary opinion, Professor Aronson states: "in order to accept the validity of Redmond's arguments in favor of disqualification, the Court must find that: 1. Despite the fact that the [September 29, 2004] engagement letter limited Heller Ehrman's representation to Avocent, the relationship nonetheless extended to approximately 18 other Avocent subsidiaries and affiliates including Redmond." See Dkt. #68 at ¶31. In his opinion, however, Professor Aronson fails to acknowledge that

1  sibling corporation." Black's Law Dictionary 63 (8th ed. 2004) (emphasis added). Under this

2  definition, there is no dispute that in April 2004 plaintiff Redmond, as a sister corporation to

3  OSA, was OSA's affiliate. See Dkt. #58-3 at ¶2 ("Avocent Corporation's acquisition of OSA

4  concluded in April 2004. As a result of the acquisition transactions, OSA became a wholly-

5  owned subsidiary of Avocent Corporation, and thus, a sister corporation to Avocent

6  Redmond."). Therefore, by agreeing to represent "OSA . . . and its affiliates," Heller Ehrman

7  represented Redmond.[4]

8       Although the April 2004 legal services agreement was attached to Mr. Gavenman's

9  declaration in support of defendants' opposition, defendants have provided no explanation as to

10  why the plain language expressing agreement to represent the OSA and its affiliates should be

11  disregarded. In paragraph 9 of his declaration (Dkt. #67), Mr. Gavenman simply states:

12       An engagement letter reflecting OSA's new status was prepared and sent to OSA
         in 2004. I do not have in my possession a fully-executed version of the April 2004
13       engagement agreement, however, a true and correct copy of that agreement bearing
         my signature is attached hereto as Exhibit A. That April 2004 agreement was
14       directed to Mr. Mark Lee, President of OSA, and indicates that the parties to the
         agreement were Heller Ehrman and OSA,[5] now a wholly-owned subsidiary of
15       Avocent.

16

17  _____

18  Heller Ehrman did just that when it agreed in April 2004 to represent OSA and its affiliates, which
    included Redmond.

19   [4] Using the April 2004 agreement to find the existence of an attorney-client relationship between
20  Heller Ehrman and Redmond is consistent with defendants' use of the September 2004 agreement to
    contend that there was no attorney-client relationship. Defendants' expert, who notably did not opine on
21  the April 2004 agreement, found the September 29, 2004 engagement letter as dispositive evidence that
    there was no attorney-client relationship. See Dkt. #68 at ¶12 ("I find the engagement letter
22  unambiguous, and clearly provides notice that affiliates of Avocent, including Redmond, would have no
    reasonable basis to believe they also enjoyed an attorney-client relationship with Heller Ehrman.").
23  Following this line of reasoning, the April 27, 2004 legal services agreement clearly provides notice that
    affiliates of OSA, which include Redmond, have a reasonable basis to believe that they enjoy an attorney-
24  client relationship with Heller Ehrman.

25   [5] This is incorrect, as the agreement states that the parties to the agreement are Heller Ehrman
26  and "OSA . . . and its affiliates."

    ORDER GRANTING PLAINTIFF'S MOTION
    TO DISQUALIFY HELLER EHRMAN LLP        -6-

In their response, defendants are notably silent on the scope of the of the April 27, 2004 engagement letter.  Defendants' expert, Professor Aronson, also does not comment on the letter despite the fact that it was attached as Exhibit A to Mr. Gavenman's declaration and in the course of his opinion Professor Aronson comments on the substance of Mr. Gavenman's declaration and all the other exhibits to his declaration.  See Dkt. #68 (Aronson Decl.) at ¶¶12, 21 (citing to Exhibits B and C of Gavenman's declaration but failing to consider Exhibit A, the April 27, 2004 agreement).  Instead, defendants and their expert rely on the 1995 American Bar Association Committee on Professional Ethics Formal Opinion 390, which defendants state "cautions against assuming that a firm's representation of one corporate affiliate will be deemed representation of an entire 'corporate family.'"  See Response at 4; Dkt. #68 at ¶9.  While it is true Formal Opinion 390 concluded that "whether a lawyer represents a corporate affiliate of his client, for purposes of Rule 1.7, depends not upon any clear-cut per se rule but rather upon the particular circumstances," the opinion went on to state that the "client-lawyer relationship is principally a matter of contract" and "[c]learly, a corporate affiliate must be treated as a client, whether generally or only for purposes of Rule 1.7, if the lawyer has agreed so to treat it, regardless of whether any actual work has been or is to be performed for the affiliate."  See ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 390 (1995) (emphasis added).  Given these facts, the Court finds that plaintiff's belief that Heller Ehrman represented Redmond is reasonable.

Defendants assert that even if there was an attorney-client relationship, the relationship was terminated and therefore there is no conflict in this case.[6]  The Court, however, does not

_____

[6] Defendants' termination argument is directed at the relationship between Avocent Corporation and Heller Ehrman under the September 29, 2004 agreement between Avocent Corporation and Heller Ehrman.  See Dkt. #67, Ex. B.  The Court's finding that a relationship existed between Heller Ehrman and plaintiff is based on the April 27, 2004 legal services agreement.  See id., Ex. A.  Even assuming the April 27, 2004 engagement terminated, Heller Ehrman still has a conflict under RPC 1.9 as discussed below.

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP          -7-

need to reach the termination issue, however, because as discussed below, even if Redmond is considered Heller Ehrman's <u>former</u> client, Heller Ehrman has a conflict of interest under Rules 1.9 and 1.10.[7]

Defendants also assert that through the September 29, 2004 engagement letter with Avocent Corporation, Heller Ehrman's representation did not extend to any of Avocent Corporation's affiliates, including Redmond. Even if Heller Ehrman's September 29, 2004 representation did not extend its relationship beyond Avocent Corporation, in April 2004 Heller Ehrman agreed to represent "OSA . . . and its affiliates." Therefore, even if the September 2004 letter is construed to cut off representation of any of Avocent Corporation's affiliates, OSA and its affiliates were still represented by Heller Ehrman from April 27, 2004 until September 29, 2004. And, Heller Ehrman's work that plaintiff claims is substantially related to the issues in this case was done during this period. Heller Ehrman's invoices from April, May, June and July of 2004 for work done after the after the April 27, 2004 agreement show that Heller Ehrman was doing intellectual property licensing work that plaintiff claims creates the conflict in this case. <u>See</u> Dkt. #58, Ex. 3 at ¶3-5; Dkt. #67 at ¶13(b), (c); Motion at 9-10; Reply at 5.

Finally, defendants assert that even if there is an attorney-client relationship that would create a conflict, the conflict was prospectively waived. <u>See</u> Response at 8. In support of this contention, defendants and their expert point to language in the September 29, 2004 engagement letter. <u>See id.</u>; Dkt. #68 at ¶21. This letter does not waive the conflict, however, because the prospective waiver applies only to <u>un</u>related matters, and as discussed below, defendants have not met their burden to show that this litigation matter is not substantially related to the work done by Heller Ehrman in 2004. Additionally, even if this prospective waiver applied to the

---

[7] Given the Court's determination that Heller Ehrman has a conflict under RPC 1.9(a) if Redmond is considered a former client, the issue of whether Redmond is a current client is not outcome-determinative. If Redmond were considered a current client, Heller Ehrman would be disqualified under RPC 1.7 because the representation of defendants in this matter is directly adverse to plaintiff Redmond, and the exceptions under RPC 1.7(b) have not been met here.

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP          -8-

1
2
3
4

issues in this case, only Avocent Corporation agreed to waive prospective conflicts.  Given that defendants construe this letter as a representation of Avocent Corporation only, the agreement cannot also be construed by defendants as a waiver by Avocent's affiliates OSA and Redmond. See Response at 4-5.

5

### 2.   Conflict under RPC 1.9(a) and RPC 1.10(a)

6
7
8

Given the Court's finding that Heller Ehrman represented plaintiff Redmond, the next issue is whether Heller Ehrman has any duties under RPC 1.9 to its former client Redmond that prevent Heller Ehrman from representing defendants in this litigation matter.

9

Under RPC 1.9(a):

10
11

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are material adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

12
13
14
15
16
17
18

"In determining whether a violation of Rule 1.9 requires disqualification, the burden of proof rests 'upon the firm whose disqualification is sought.'" FMC Tech., Inc. v. Edwards, 420 F. Supp. 2d 1153, 1158 (W.D. Wash. 2006) (quoting Amgen, Inc. v. Elanex Pharms., Inc., 160 F.R.D. 134 (W.D. Wash. 1994).  To ascertain whether a conflict exists under RPC 1.9(a), "the significant elements are (1) that the conflict involves a former client; (2) that the subsequent representation is materially adverse to the former client; and (3) that the matters are substantially related."  Id. (emphasis in original).

19
20
21
22
23
24

The first element of RPC 1.9(a) is met in this case given the Court's finding in Section II.B.1 above that plaintiff Redmond is a former client of Heller Ehrman for conflicts purposes. The second element is also met because Heller Ehrman's former client is the plaintiff in this litigation, therefore its interests are materially adverse to Heller Ehrman's current client, defendants in this case.  See FMC Tech., Inc., 420 F. Supp. 2d at 1160 ("Parties are allowed to switch sides; lawyers are not.").

25
26

The Court also finds that the third element, whether the matters are "substantially

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP          -9-

related," is also satisfied here.  Defendants, as the party opposing Heller Ehrman's disqualification, have the burden to show that the matters are not substantially related.  In support of the motion for disqualification, plaintiff submitted a declaration from Mr. Saracino, the Vice President of both Redmond and Avocent Corporation, stating that during Heller Ehrman's licensing work, it "expressed Avocent's view on which aspects of its intellectual property, including its patents, were more commercially valuable to Avocent compared to other aspects of Avocent's intellectual property.  All of this information was conveyed to Heller Ehrman[.]"  See Dkt. #58-3 at ¶5.  Mr. Saracino goes on to state that:  "The scope of the licenses would have encompassed the U.S. patent family that includes the three patents-in-suit in the present lawsuit – namely, U.S. Patent Nos. 5,884,096, 6,112,264, and 7,113,978.  Even though the '978 patent had not issued in 2004, it would have been included in the agreements because the agreements were structured to include future members of the patent family."  Id. at ¶4.  In its Motion, plaintiff asserts that the licensing work addressed by Mr. Saracino is substantially related to this litigation because the "circumstances surrounding Avocent's licensing practices – including the terms upon which Avocent would be willing to license the patents – may be relevant to a reasonable royalty analysis.  Much of the information Avocent conveyed to Heller related to the terms under which Avocent would license its intellectual property including the patents-in-suit."  See Motion at 9-10.  Furthermore, defendants themselves have implicitly shown in their discovery requests that the licensing work is substantially related to the issues in this case.  See Section II.B.4, infra.

        Defendants have not substantively rebutted plaintiff's contentions in order to show there is not substantial relatedness between Heller Ehrman's prior representation of Redmond and their representation of defendants in this case.[8]  Instead, defendants rely on out-of-district and

--------

        [8] Defendants' expert concluded that he could not opine on this issue.  See Dkt. #68 at ¶26 ("I note that my areas of expertise do not include intellectual property law, so I cannot render an opinion as to whether the 'reasonable royalty' issue raised by Redmond is either a legitimate one or if Heller

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP            -10-

circuit authority to assert that plaintiff, not defendants, have a "heavy burden" to show substantial relationship.  See Response at 9.  Courts in this district, however, have repeatedly placed the burden on the firm whose disqualification is sought.  See Jones v. Rabanco, Ltd., 2006 U.S. Dist. Lexis 53766, at *6 (W.D. Wash. Aug. 3, 2006) ("It is the Court's duty to resolve allegations that arise concerning attorney conflicts of interest because the Court is authorized to supervise the conduct of the members of its bar. . . .  The burden of proof in such matters rests with the firm whose disqualification is sought."); FMC Tech., Inc., 420 F. Supp. at 1158; Amgen, Inc., 160 F.R.D. at 140.  While defendants argue that the "standard of disqualification urged by Redmond and Avocent would effectively proscribe any law firm that does any work for any one of Avocent's numerous subsidiaries from ever again participating in a matter involving any of them," had Heller Ehrman expressly agreed to limit its representation to specific OSA affiliates instead of "its affiliates" in the April 2004 legal services agreement, this conflict could have been avoided.  See supra note 2; Response at 10.

In summary, defendants have failed to carry their burden to overcome plaintiff's showing that the licensing work done by Heller Ehrman in 2004 and the issues in this case are substantially related.  See Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980) ("It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification.").  This, however, does not end the inquiry because in order to find a conflict under RPC 1.9(a), the Heller Ehrman attorneys representing defendants in this case must be imputed with a conflict because they are not the same lawyers that represented Redmond in the 2004 licensing work.  See Dkt. #67.

---

Ehrman's former representation of Avocent is substantially related to Redmond's patent infringement claims.").  And, Mr. Gavenman, the Heller Ehrman shareholder in charge of the OSA/Avocent matters, offers nothing in his declaration to contradict plaintiff's claim that Heller Ehrman's work in 2004 is substantially related to the issues in this litigation.

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP            -11-

### 3.      The imputed conflict under RPC 1.10(a)

Based on the declarations submitted by Heller Ehrman in this matter, the only Heller Ehrman lawyer still at the firm that was involved in the 2004 licensing work is Mr. Gavenman. The issue then becomes whether under RPC 1.9, Mr. Gavenman "represented" Redmond in 2004 and whether this representation is imputed under RPC 1.10(a) to the Heller Ehrman attorneys currently representing defendants in this litigation.

Under Bohn v. Cody, a client's subjective belief determines whether an attorney-client relationship exists as long as it is "reasonably formed based on the attending circumstances, including the attorney's words or actions." Bohn, 119 Wn.2d at 363.  Although there is no evidence showing that Mr. Gavenman billed time to the OSA "post-acquisition activities," this is not dispositive to whether or not Mr. Gavenman "represented" Redmond since the client's subjective belief is that Mr. Gavenman was the Heller Ehrman responsible attorney for the 2004 licensing work.  See Dkt. #58-3 at ¶12 ("Based on my involvement with Heller Ehrman, I understood that Mr. Jon Gavenman was (and is) the responsible attorney for the OSA and Avocent legal matters at Heller Ehrman.").  Given that Mr. Gavenman:  (1) authored the April 27, 2004 legal services agreement to OSA and its affiliates, (2) was copied on the May 18, 2005 letter request for transfer of the OSA and Avocent Corporation patent and patent-related files, and (3) authored the July 27, 2004 "conflict waiver" letter, plaintiff's assertion that it believes that Mr. Gavenman represented OSA and its affiliates is reasonable.  See Dkt. #58-3, Exs. A, B; Dkt. #67, Ex. A.  Furthermore, Mr. Gavenman was the "assigned general corporate shareholder on the OSA engagement at the time of the merger, including the limited post-merger matters for which Heller Ehrman's engagement was extended." Dkt. #67 at ¶7.  These "post-merger" matters included the Avocent intellectual property licensing work.

Based on this information, were Mr. Gavenman acting alone as a lawyer, he would be prohibited from representing defendants against Redmond in this action under RPC 1.9(a). Under RPC 1.10(a), "while lawyers are associated in a firm, none of them shall knowingly

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP          -12-

represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9." Because of this rule, the Heller Ehrman lawyers representing defendants in this action are imputed with Mr. Gavenman's RPC 1.9 conflict of interest with Redmond. Accordingly, Heller Ehrman has a conflict of interest in continuing to represent defendants in this action.

### 4.     The conflict caused by Heller Ehrman's files

Further complicating Heller Ehrman's conflict in this matter is its retention of OSA "post-acquisition" files.  Under Fed. R. Civ. P. 34(a), a party may request "documents or electronically stored information . . . which are in the possession, custody or control of the party upon whom the request is served[.]"  In their requests for production to plaintiff in this case, defendants have requested that plaintiff produce:

- "All documents that constitute, refer or relate to any licenses to any of the PATENTS-IN-SUIT or RELATED PATENTS AND APPLICATIONS;"

- "All documents that constitute, refer or relate to any communications between YOU and anyone concerning any licenses to, or offers to license, any of the PATENTS-IN-SUIT or RELATED PATENTS AND APPLICATIONS;"

- "All documents that refer or relate to plans or efforts to license any of the PATENTS-IN-SUIT or RELATED PATENTS AND APPLICATIONS;" and

- "All documents provided by YOU to anyone or by anyone to YOU in preparation for or during licensing discussions pertaining to the PATENTS-IN-SUIT or RELATED PATENTS AND APPLICATIONS."

See Dkt. #58-6 (Defendant Belkin's February 27, 2007 Requests for Production to Plaintiff) at Request Nos. 14, 15, 18, and 37; Dkt. #58-7 (Defendants Rose Electronics', Peter Macourek's, and Darioush Rahvar's First Set of Requests for Production to Plaintiff) at Request for Production 1 (requesting "All documents, ESI [electronically stored information], and things relating to the requests for production served by Belkin Corporation on February 27, 2007).

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP          -13-

Given plaintiff's belief that it was previously represented by Heller Ehrman,[9] in order to comply with these requests for production, plaintiff presumptively has an obligation under Fed. R. Civ. P. 34 to contact Heller Ehrman and obtain whatever "documents and electronically stored information" Heller Ehrman has that is responsive to defendants' discovery requests.[10] See Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 233 F.R.D. 209, 212 (D.D.C. 2006) ("Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control"); 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2210 (2d ed. 1994) ("The concept of 'control' is very important in applying the rule [Fed. R. Civ. P. 34], but the application of this concept is often highly fact-specific.  Inspection can be had if the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy.  Thus, a party can be required to produce a document that it has turned over to its attorney.").  Given the Court's finding above that by representing "OSA . . . and its affiliates" Heller Ehrman thereby represented Redmond, coupled with plaintiff's belief that Heller Ehrman represented it, the files that Heller Ehrman has retained relating to the OSA post-acquisition matters may also contain information relating to Redmond that are responsive to defendants' discovery requests.  This puts Heller Ehrman in the troublesome position of having to review and produce documents from its own files relating to the representation of a former client because a current litigation client has requested the documents in discovery.

---

[9]  See Reply at 3 ("Heller represented OSA's affiliates, including Avocent Redmond, and Heller performed the intellectual property licensing work on behalf of those affiliates.") (emphasis added).

[10]  Under the May 1, 2007 Minute Order entered in this case, this Court has limited authority to resolve only plaintiff's motion for disqualification.  See Dkt. #85.  Accordingly, the references in this Order to the parties' discovery obligations are made solely to resolve the motion for disqualification.  Any disputes regarding the discovery requests themselves will be decided by the trial judge in this matter, the Honorable Marsha J. Pechman.

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP          -14-

1    At this point, neither the Court, Heller Ehrman, plaintiff, nor defendants, know for certain

2    what information is contained in the files retained by Heller Ehrman because Heller Ehrman has

3    limited its review to the index of the files presumably to avoid any assertion by plaintiff that

4    Heller Ehrman has obtained privileged or confidential information by reviewing the files'

5    content.  See Dkt. #68 (Terwilliger Decl.) at ¶5 ("I have not reviewed the substance of the files

6    for any of the matters referenced in Redmond's motion.  I have reviewed the file indices, and

7    have also reviewed the engagement letters and audit letters that are submitted along with this

8    opposition."); Dkt. #67 (Gavenman Decl.) at ¶20, 21 (stating that he reviewed the

9    "electronically-maintained index of the off-site files," but that the actual contents of files like

10   Mr. Bowen's files are "unknown.").  Accordingly, Heller Ehrman has not reviewed the actual

11   contents of the files in response to this motion or as part of defendants' discovery requests.

12       Depending on the content of the files, plaintiff might be obligated under defendants'

13   discovery requests to have Heller Ehrman turn over documents contained in the files.  In order to

14   avoid waiving the attorney-client privilege or any Heller Ehrman work product in these files,

15   Heller Ehrman as counsel for "OSA . . . and its affiliates" would have to conduct the review of

16   the files.  This scenario puts Heller Ehrman in conflict between its obligations to its former

17   client Redmond and defendants in this case.  On behalf of defendants, within the boundaries of

18   the ethical and procedural rules, Heller Ehrman would be reviewing the OSA files with a view

19   toward obtaining information beneficial to defendants.  In reviewing and producing the files on

20   behalf of Redmond as an OSA affiliate, Heller Ehrman would arguably be seeking protection of

21   the attorney-client privilege and work product doctrine to the fullest extent available under the

22   law.  Should any issue regarding attorney-client privilege or work product doctrine arise, Heller

23   Ehrman lawyers would be both asserting privilege or work-product on behalf of Redmond as an

24   OSA affiliate, and representing defendants in contesting any claim of privilege.  This situation

25   puts Heller Ehrman in conflict under RPC 1.9 and also under RPC 1.7(a)(2) because there is a

26   significant risk that Heller Ehrman's representation of defendants in this matter will be

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP          -15-

materially limited by the decisions Heller Ehrman makes about the production of the files on plaintiff's behalf.  Accordingly, Heller Ehrman is disqualified from representing defendants in this matter.

As a final note, defendants will likely suffer minimal prejudice by Heller Ehrman's disqualification.  The amended complaint in this case was filed on January 16, 2007, and defendants were not served until January 19, 2007.  See Dkt. ##11, 14.  Heller Ehrman filed a notice of appearance on defendants' behalf on February 7, 2007.  See Dkt. #17.  In addition to Heller Ehrman's representation of defendants as local counsel, on February 12, 2007, four attorneys from Howrey LLP were admitted pro hac vice to represent defendants.  See Dkt. ## 28-31.  It appears, based on the filings submitted as part of this motion, that the Howrey attorneys are taking an active role in litigating this case given that they drafted defendants' discovery requests.  See Dkt. #58-5.  As a result, the prejudice defendants will suffer through Heller Ehrman's disqualification is minimal because of the continuing involvement of Howrey LLP and the fact that Heller Ehrman entered an appearance in this matter only three months ago.

### III.  CONCLUSION

For all of the foregoing reasons, "Avocent's Motion to Disqualify Heller Ehrman LLP" (Dkt. #58) is GRANTED.  Heller Ehrman and its attorneys are disqualified from representing defendants Rose Electronics, Peter Macourek and Darioush "David" Rahvar in this matter, effective as of the date of this order.  With the disqualification of Heller Ehrman, the Howrey LLP attorneys and defendants shall associate with other local counsel in accordance with Local General Rule 2(d) within 20 days from the date of this order.

DATED this 30th day of May, 2007.

*MNS S Casnik*

Robert S. Lasnik
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION
TO DISQUALIFY HELLER EHRMAN LLP          -16-