UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AVOCENT REDMOND CORP.,

Plaintiffs,

v.

ROSE ELECTRONICS, INC., et al.,

Defendants.

No. C06-1711MJP

ORDER DENYING MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

This matter comes before the Court on Defendant Rose Electronics' motion to disqualify Plaintiff's law firm Davidson Berquist Jackson & Gowdey LLP ("Davidson Berquist") from participating in this case. (Dkt. No. 128.) Plaintiff opposes the motion. (Dkt. No. 136.) Having considered the motion and response, Defendant's reply (Dkt. No. 144), all documents submitted in support thereof and the record herein, the Court DENIES Rose Electronics' motion to disqualify.

**Background**

This is a suit for patent infringement, brought by Avocent Redmond Corporation against Rose Electronics and others. Avocent alleges infringement of U.S. Patent No. 5,884,096 ('096 patent"), U.S. Patent No. 6,112,264 ("'264 patent"), and U.S. Patent No. 7,113,978 ("the '978 patent") in violation of 35 U.S.C. § 271. These are the second, third, and fourth patents in a family of patents referred to as the "Beasley Patent" family.[1] (See Exs. 1-3 to Compl.; Berquist Decl. ¶ 5.) These patents all involve keyboard-video-mouse ("KVM") switch technology.

Plaintiff Avocent Redmond is a wholly-owned subsidiary of Avocent Corporation, and was formerly known as Apex PC Solutions, Inc. In 1998, Apex was the plaintiff in two related cases in

---

[1] Danny Beasley is a named inventor on each of these patents.

ORDER - 1

this district — one against Rose Electronics and another against Cybex Computer Products Corporation — based on the first patent in the Beasley Patent family. See <u>Apex PC Solutions, Inc. v. Rose Electronics</u>, C98-245Z; <u>Apex PC Solutions, Inc. v. Cybex Computer Products Corp.</u>, C98-246Z. Apex moved to consolidate the two actions, a motion which both Rose and Cybex opposed. (See Berquist Decl., Exs. 2-3.)  Rose opposed the consolidation on the following grounds:

> Rose and Cybex are unrelated parties whose products were developed completely independent of one another. Rose is unaware of any areas of commonality between the two companies' products and Apex has identified none in its motion for consolidation. The evidence relating to the details of the various products that each defendant manufactures will be different, involving analysis of a different set of documents and testimony from different witnesses. Any evidence of infringement by Cybex will be irrelevant to Apex's case against Rose, and any evidence of infringement by Rose will be irrelevant to Apex's case against Cybex.

(Berquist Decl., Ex. 2, p. 2.)  The Honorable Thomas S. Zilly consolidated discovery in the two actions, but deferred the decision of whether to consolidate for trial. (Id., Ex 4.)  Rose and Cybex were required to cooperate in the scheduling of discovery and in deposition discovery. Both actions ended in early 1999 through the filing of separate stipulated dismissals without prejudice. (Id. ¶ 35; Davisdon Decl. ¶ 20.)

In the 1998 Apex litigation, Cybex was represented by Scott Davidson, Jay Berquist, and Don Jackson of Nixon & Vanderhye PC.  Rose was represented by Robert McAughan and Michael Turton of Arnold White & Durkee (now Howrey).  In 2000, Apex and Cybex merged. (Berquist Decl., Ex. 11.)  The merger created a common parent, Avocent Corporation, and two wholly-owned subsidiaries, Avocent Redmond Corp. (formerly Apex) and Avocent Huntsville Corp. (formerly Cybex). (Id.)  Since the merger, Avocent Redmond and Avocent Huntsville have retained attorneys Scott Davidson, Jay Berquist, and Don Jackson, now at Davidson Berquist Jackson & Gowdey, for patent matters. (Davidson Decl. ¶ 21; Berquist Decl. ¶ 42.)

Attorneys Davidson, Berquist, and Jackson represent Avocent Redmond in this patent infringement action against Rose and other defendants. Rose argues that the prior representation of Cybex in the Apex litigation against Cybex and Rose, prohibits these attorneys from now representing Avocent in a related matter against Rose.

ORDER - 2

**Discussion**

**I.      Standard to be Applied & Burden of Proof**

In actions based on federal law, such as a patent infringement suit, the federal common law of attorney-client privilege applies. Admiral Ins. Co. v. U.S. Dist. Ct., 881 F.2d 1486, 1492 (9th Cir. 1989). Rose Electronics argues that the Davidson Berquist attorneys should be disqualified because Davidson Berquist's former client, Cybex, and Rose maintained a joint defense in the prior 1998 Apex litigation. The burden of proving that a joint defense or common interest privilege applies falls on the party seeking disqualification. United States v. Stepney, 246 F. Supp. 2d 1069, 1076 (N.D. Cal. 2003); see also In re Bevill, Bresler & Schulman Asset Mgmt. Corp., 805 F.2d 120, 126 (3d Cir. 1986).

**II.     Motions to Strike**

    **A.     Rose's motion to strike certain statements in declarations of attorneys Berquist, Davidson and Jackson**

Rose Electronics moves to strike certain portions of the declarations of James Berquist, Scott Davidson, and Donald Jackson. The local rules make clear that motions to strike must be included "in the responsive brief." Local Civil Rule 7(g). In this case, Rose mentioned the motion to strike in its reply brief, but set out the specific reasons for its motion in a separate exhibit attached to its reply. (See Dkt. No. 144-2.) This attempt to avoid the page limitations in the local rules is not well-taken. See Local CR 7(e)(4) (reply briefs for non-dispositive motions shall not exceed six pages).

Regardless, the motion to strike is, with one exception, moot. The Court has not relied upon the statements identified in the motion to strike. The only exception is the last four sentences of paragraph twelve of Mr. Davison's declaration. That paragraph describes how Cybex pursued another patent that Cybex believed might invalidate Apex's patent. (Davidson Decl. ¶ 12.) Contrary to Rose's assertion, this statement is not conclusory or speculative, and, because he was lead counsel for Cybex, it is presumably information within Mr. Davidson's personal knowledge. The motion to strike the last four sentences of paragraph twelve of the Davidson declaration is therefore DENIED.

ORDER - 3

### B. Avocent's motion to strike Exhibit D

In response to a separately filed motion to seal, Avocent moved to strike Exhibit D to Rose's motion to disqualify. (See Dkt. No. 134.)  In ruling on the motion to seal, the Court stated that it would address the motion to strike in the context of this motion.

Exhibit D contains selected and redacted invoices from Rose's counsel generated during the 1998 Apex litigation. (See Dkt. No. 129.)  Avocent argues that these invoices are attorney-client privileged information, and that Rose cannot use them to its advantage without revealing the remainder of the invoices, which Avocent believes would reveal that Rose communicated regarding the same topics with both Cybex and its opponent, Apex.  Avocent argues that these withheld invoices would therefore overcome any impression that confidential information was disclosed to Cybex's lawyers.

Exhibit D does not contain attorney-client privileged information.  Particular time entries are privileged only if they "reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services rendered, such as researching the particular areas of the law." Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992).  These redacted invoices do not reveal any client confidences — they use boilerplate language to describe routine legal tasks. Moreover, as the Court explains below, the invoices do not create an impression that client confidences were shared.  Avocent need not be concerned that Rose will effectively use the invoices as both a sword and a shield.  The motion to strike Exhibit D is DENIED.

### III. Joint Defense / Common Interest Privilege

Rose Electronics moves to disqualify Avocent's counsel on the theory that the Davidson Berquist lawyers were privy to Rose's confidences in a prior related case in which Davidson Berquist's client was a co-defendant of, and shared a common interest with, Rose.  The "common interest" or "joint defense" privilege is an exception to the general rule that the voluntary disclosure of a privileged attorney-client or work-product communication to a third party waives the privilege. See Hunydee v. United States, 355 F.2d 183, 185 (9th Cir. 1965).  The privilege protects the

ORDER - 4

confidentiality of communications passing from one party to the attorney of another party when made to further a joint effort. United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989). The privilege can give rise to a "disqualifying conflict where information gained in confidence by an attorney becomes an issue ...." United States v. Henke, 222 F.3d 633, 637 (9th Cir. 2000) ("[A]n attorney should ... not be allowed to proceed against a co-defendant of a former client where the subject matter of the present controversy is substantially related to the matters in which the attorney was previously involved, and wherein confidential exchanges of information took place between the various co-defendants in preparations of a joint defense.") (quoting Wilson P. Abraham Const. Corp. v. Armco Steel Corp., 559 F.2d 250, 253 (5th Cir. 1977)).. The common interest or joint defense privilege applies where (1) the communication was made by separate parties in the course of a matter of common interest or joint defense; (2) the communication was designed to further that effort; and (3) the privilege has not been waived. Bevill, 805 F.2d at 126; Baden Sports, Inc. v. Kabushiki Kaisha Molten, CV06-0210MJP, 2007 WL 1185680, at *1 (W.D. Wash. April 20, 2007); Arkema Inc. v. Asarco, Inc., C05-5087RBL, 2006 WL 1789044 (W.D. Wash. June 27, 2006).

### A.   Was a Common Interest / Joint Defense Established?

The parties dispute whether Cybex and Rose ever intended or agreed to invoke the joint defense or common interest privilege. A written agreement is not required, but the parties must invoke the privilege: they must intend and agree to undertake a joint defense effort. See Stepney, 246 F. Supp. 2d at 1079-80 & n.5; see also Schwimmer, 892 F.2d at 243 (holding that the joint defense privilege "serves to protect the confidentiality of communications passing from one party to the other attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel"); Bevill, 805 F.2d at 126 ("Bevill produced no evidence that the parties had agreed to pursue a joint defense strategy.").

It does not appear from the record that any joint defense agreement was ever entered. It is undisputed that Rose and Cybex never signed any written joint defense agreement. And the Davidson Berquist lawyers emphatically deny that any such agreement existed. (See Berquist Decl. ¶ 15;

ORDER - 5

Davidson Decl. ¶ 5-6.) Scott Davidson, lead counsel for Cybex (and now counsel for Avocent) states in his declaration no written agreement ever entered and no terms of any joint defense agreement were ever negotiated. (Davidson Decl. ¶ 6.) Mr. Davidson explains that because no defense agreement existed, "we intentionally kept all of Cybex's confidential trial and discovery strategies concealed from Rose to the extent we were legally able to do so." (Id.) Doyle Weeks, current president of Avocent Redmond and former vice president of Cybex, concurs and states in his declaration that because Cybex and Rose were direct competitors, "Cybex would never have entered into a joint defense agreement with Rose which would have required it to share confidential information or other strategic trial strategy with Rose." (Weeks Decl. ¶ 2.) Avocent points out that the parties never met jointly with their respective counsel, that counsel only met once (to jointly take the deposition of Apex), that litigation costs were not shared, and that no effort was made to jointly select experts. (Berquist Decl. ¶¶ 16, 17, 29, 31; Weeks Decl. ¶ 3.) The parties did not assign issues for trial, consolidate witnesses, or discuss the way evidence would be marshaled at trial. (Davidson Decl. ¶ 17.) Finally, the Davidson Berquist lawyers identify a strategy that Cybex alone pursued during the course of the Apex litigation. Cybex had purchased the closest prior art and had filed a re-issue application at the United States Patent and Trademark Office seeking to "provoke an interference with Apex's patent." (Berquist Decl. ¶ 32.) Had Cybex been successful, it could have asserted the '842 patent against Apex and Rose. (Davidson Decl. ¶ 12.) This strategy further supports Avocent's argument that the interests of Cybex and Rose were not aligned.

Rose offers the declarations of Robert McAughan and Michael Turton, Rose's lawyers during the 1998 Apex litigation. But these declarations do not prove that any joint defense agreement was contemplated or entered. Mr. McAughan and Mr. Turton identify a single common substantive issue — Rose and Cybex's common interest in demonstrating that the asserted patent was invalid. (McAughan Decl. ¶ 5; Turton Decl. ¶ 5.) They also both state that they shared their mental impressions and legal theories with the Cybex lawyers with the expectation that, due to Cybex's status as a co-defendant in a related case involving the same patent, they would remain protected

ORDER - 6

attorney work product. (McAughan Decl. ¶ 9; Turton Decl. ¶ 12.) But they do not identify any communication between themselves and either their client or Cybex's counsel regarding a joint defense effort or strategy. The fact that they coordinated some of their efforts, like planning the Apex deposition, discussing discovery matters, and attending to other non-substantive scheduling matters, appears to be a necessary result of Judge Zilly's decision to combine the cases for pre-trial discovery, rather than a reflection of any joint defense strategy.

### B. Was Confidential Information Shared?

Rose has not shown that the parties undertook a joint defense effort. But even if the parties did intend to create a joint defense privilege, Rose has not proven that client confidential information was shared for the purpose of preparing that common defense. Although Mr. McAuchan and Mr. Turton both state in their declarations that they shared "mental impressions, tentative conclusions, opinions, and legal theories" regarding the case (particularly regarding their respective invalidity defenses and preparation for the Apex deposition), they have failed to identify any specific client confidences that were shared. Rose offers invoices sent to Rose for the 1998 Apex litigation from its law firm Howrey. Those invoices reveal that attorneys for Cybex and Rose communicated regarding a number of issues pertinent to the litigation, including discovery, the Apex deposition, scheduling, and motions for summary judgment. (McAughan Decl. ¶ 11; Dkt. No. 129, Ex. D to Def.'s Motion to Disqualify.) But the invoices do not document the sharing of any confidential information. The Court will not assume that just because the parties jointly deposed a single witness and exchanged drafts of a deposition notice and other motions that they exchanged <u>confidential</u> information. <u>See</u> <u>Turner v. Firestone Tire & Rubber Co.</u>, 896 F. Supp. 651, 654 (E.D. Tex. 1995). And because they have not identified any particular secret shared, it is impossible to know whether any (or all) of those secrets were eventually shared with Apex, thereby waiving any privilege. In addition, the Davidson Berquist lawyers deny that they shared any confidential information with Rose or its counsel. (Berquist Decl. ¶¶ 25, 33; Davidson Decl. ¶¶ 6-9, 12.) Mr. Davidson states that he "intentionally did not reveal any of Cybex's trial or discovery strategies." (Davidson Decl. ¶ 7.) Rose

has not carried its burden of showing that confidential communications were made in support of any joint defense effort.[2]

### IV.    Alternative Grounds for Disqualification

Rose also argues that Davidson Berquist should be disqualified because it has a conflict of interest under Washington RPC Rules 1.7 and 3.7.  Rule 1.7 provides: "[A] lawyer shall not represent a client if ... there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to ... a third person."  This rule is inapplicable here: because Cybex and Rose never pursued a joint defense strategy, Davidson Berquist does not have any responsibilities to Rose.

Rule 3.7 prohibits a lawyer from acting as advocate at a trial in which the lawyer is likely to be a necessary witness.  The rule includes a number of exceptions.  Rose argues that Davidson Berquist should be disqualified because its lawyers will be called as witnesses regarding Rose's unclean hands defense.  This argument is premature.  If the unclean hands defense survives summary judgment, the Court will consider, upon a separate motion, whether the Davidson Berquist lawyers may testify regarding the issue and whether any of the Rule 3.7 exceptions apply in this case.

### Conclusion

Rose Electronics moved to disqualify the law firm of Davidson Berquist because lawyers from that firm previously represented Rose's co-defendant, Cybex, in litigation brought by Avocent's predecessor, Apex, regarding another patent in the same patent family asserted here.  Because Rose has failed to show that confidential exchanges of information took place between Cybex and Rose in preparation of a joint defense, the motion to disqualify is DENIED.

Dated this 9th day of October, 2007.

Marsha J. Pechman
United States District Judge

---

[2] Because Rose has not established that confidential exchanges of information took place between Cybex and Rose in preparation of a joint defense, the Court need not consider Avocent's argument that Rose waived work product protection for its communications with the Davidson Berquist lawyers in the 1998 litigation.

ORDER - 8