1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AVOCENT REDMOND CORP., a Washington
corporation,

            Plaintiff,

      v.

ROSE ELECTRONICS, a Texas general
partnership; PETER MACOUREK, an
individual; DARIOUSH "DAVID" RAHVAR,
an individual; ATEN TECHNOLOGY INC., a
California corporation; ATEN
INTERNATIONAL CO., LTD., a Taiwanese
Company; BELKIN INTERNATIONAL, INC.,
a Delaware corporation, and BELKIN INC., a
Delaware corporation,

            Defendants.

NO. C06-1711-MJP

AVOCENT'S MOTION TO LIFT THE
STAY AND REQUEST FOR A
SCHEDULING CONFERENCE

NOTE ON MOTION CALENDAR:
May 13, 2011

This is a patent infringement action plaintiff Avocent Redmond Corp. ("Avocent")

initiated in late 2006.  The action was stayed on October 30, 2007 pending resolution of

defendant Rose Electronics' requests to the U.S. Patent and Trademark Office ("PTO") that the

three patents-in-suit – *i.e.*, U.S. Patent Nos. 5,884,096 ("the '096 patent"), 6,112,264 ("the '264

patent"), and 7,113,978 ("the '978 patent") – be reexamined.

     At the successful conclusion of those reexaminations, Avocent moved this Court to lift

the stay.  That motion was denied on October 27, 2009.  Pursuant to the October 27, 2009 Order,

the stay was to continue pending resolution of the claims construction process by the Court of

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 1
(C06-1711MJP)
3139578.3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

Federal Claims and the parties to that litigation, Avocent and Rose, were to report to this Court rulings rendered by that court on substantive motions. (Dkt. No. 218). On July 7, 2010, following receipt of the *Markman* construction and a summary judgment order from the Court of Claims, this Court instructed the parties to provide a status report. That report was filed on July 19, 2010. On October 26, 2010, this Court found that the stay should remain in place, but again requested that the parties file a joint status report six months later. (Dkt. No. 231). The parties filed the required report on April 26, 2011. (Dkt. No. 236).

Rather than limiting their portion of the April 26 Joint Status Report to factual recitation of the status of the case and related proceedings, the defendants used that submission to argue in favor of continuing the stay indefinitely. Given the status of the Court of Claims case and the limited remaining life of the patents-in-suit, Avocent files the present motion to again urge this Court to lift the stay and to respond to the defendants' arguments for maintaining the stay. More specifically, Avocent and Rose have reached a global settlement agreement in principle regarding Rose's sales of the accused products, past, present and future, and no further action is expected in the Court of Claims case aside from the filing of a Stipulated Judgment. While that action has been pending, the defendants in this action have continued, and even expanded, their decade long infringement of Avocent's patents. Worse, the level of competition between at least Avocent and the Aten defendants has grown even sharper over the past year, causing Avocent to lose at least one major customer and to reduce its pricing to another. Avocent respectfully asks this Court to end the years of delay and to permit Avocent the opportunity to finally stop the decade long infringement by its head-to-head competitors.

## I.    BACKGROUND

### A.    Procedural Posture

This case has been stayed for the past three and a half years. Avocent initiated this action on November 27, 2006 by filing a Complaint against defendant Rose Electronics and its two general partners, Peter Macourek and Darioush "David" Rahvar (collectively, "the Rose defendants"). Avocent amended its complaint on January 16, 2007 to add defendants Aten

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 2
(C06-1711MJP)
3139578.3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  Technology, Inc., Aten International Co., Ltd. (collectively, "Aten"), Trippe Manufacturing Co.

2  ("Trippe"), and Belkin Corp.  (*See* Dkt. No. 11).  Defendant Trippe and Avocent settled their

3  dispute and Trippe was dismissed from this action on June 6, 2007.  (Dkt. No. 118).

4      About ten days before the *Markman* claim construction hearing in this action, the Rose

5  defendants moved for relief from certain dates, most notably the impending *Markman* hearing,

6  and to stay the case.  As grounds therefore, Rose noted that it intended to request that the PTO

7  reexamine the asserted claims of the three patents-in-suit.  (*See e.g.* Dkt. No. 158).  As support

8  for that relief, Rose argued that a then recent decision by the Supreme Court had created a "sea

9  change" in patent law and that the interests of justice would be served by a limited stay

10 (estimated by Rose to be about one year) in order to at least provide this Court with the benefit of

11 the Patent Office's expertise.  At the conclusion of a telephonic hearing on October 30, 2007, the

12 Court granted the Rose defendants' motion to stay.  The order staying the case reads, in part:

13      (1)  This matter is STAYED pending resolution of Defendants'
           request to the USPTO that it reexamine Avocent's patents.

14
15 (Dkt. No. 177, p. 1).  Although not parties to the motion for relief from certain dates or the

16 motion to stay this proceeding, Aten and Belkin joined in both motions during the October 30,

17 2007 teleconference and supported Rose's rationale for the delay.

18      **B.    The Reexamination Proceedings**

19      The PTO reexamination proceedings took more than the one year defendants had

20 suggested, but on March 31, 2009, the PTO terminated the reexamination of the '264 patent.  On

21 July 15, 2009, the PTO terminated the reexaminations of the '096 patent and the '978 patent.

22 Thus, by July 15, 2009, the PTO had provided its expert opinion as to the patentability of

23 Avocent's patent claims in light of the alleged "sea change" and Rose's invalidity arguments,

24 and had confirmed the patentability of every one of Avocent's claims.  *See* the Reexamination

25 Certificates issued by the PTO, attached as Exhibits 1-3 to the Declaration of John A. Knox.[1]

26
27 ───────────────────
[1] Two claims of the '978 patent were amended during the first round of reexaminations to correct an obvious error regarding the direction of signal flow.  (Unless otherwise indicated, all exhibits are attached to the Knox Decl.)

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 3
(C06-1711MJP)
3139578.3

1    Instead of accepting the PTO's validity determinations from the first round of

2    reexamination, Rose launched a second round of reexamination of these patents at the conclusion

3    of the first round of reexaminations.  As a result of that second round of reexamination

4    proceedings, the PTO again confirmed the patentability of the claims of the '096 and '264

5    patents.  *See* Exhs. 4 and 5, Reexamination Certificates.  In addition, like the confirmed claims of

6    the '264 and '096 patents, all of the '978 patent claims directed to the on-screen menu control of

7    a KVM switch have been twice confirmed.  But 9 of the 42 claims of the '978 patent, all of

8    which are directed to the so-called "pod-switch-pod" system architecture, remain in

9    reexamination.[2]  Because these nine claims are directed to a specific product architecture found

10   in only one or two of the accused KVM products, those claims can be readily separated from the

11   KVM with on-screen switch control feature that dominates the three patents-in-suit and which is

12   utilized in each and every one of the accused products.

     C.    **The Related Action Against the United States**

14   While this case was stayed, Avocent brought a related action against the United States in

15   the U.S. Court of Federal Claims.  Although Rose and the other defendants urge this Court to

16   view Avocent's conduct with hostility by mischaracterizing Avocent's Court of Claims case as

17   an "end-run" around this Court's stay, the Court may recall that it was Rose who asserted the

18   government sales defense under 28 U.S.C. § 1498 which prevents Avocent from recovering

19   damages for qualifying sales of Rose's accused products to the United States in this action.  (*See*

20   Dkt. No. 21, p. 7).  Because claims against the United States are subject to a 6-year limitation on

21   damages, Avocent was forced to bring the Claims Court action to keep the 6-year damages

22   window from further limiting Avocent's damages.  Avocent filed its § 1498 action against the

23   United States on January 31, 2008 (*i.e.*, "the United States action").  (*See* Exh. 6).

24   Rose moved to intervene in the Claims Court action.  On July 10, 2008, Judge Margolis

---

[2] The specific grounds upon which the PTO rejected these claims, and the error of that rejection, are discussed in Section II.A., below.  Historically, appeals to the internal Patent Office Board of Patent Appeals and Interferences take approximately two years from the date the opening brief is filed through completion.  Any adverse decision from the Board can be appealed to the Court of Appeals for the Federal Circuit, a process that takes approximately an additional year.

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 4
(C06-1711MJP)
3139578.3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    of the Claims Court granted Rose's motion and, over Avocent's objection, allowed Rose to

2    intervene in the United States action and to participate "as a defendant."  (*See* Exh. 7).  Although

3    Rose here refers to Avocent's Court of Claims filing as a premature "end-run," in the Court of

4    Claims, Rose asserted that Avocent unreasonably *delayed* that filing to such an extent that

5    Avocent's pre-filing damages in that action should be precluded by laches.  *See* Exh. 8, Rose

6    Electronics' Answer, p. 5.  Thus, according to Rose, Avocent's Court of Claims action was both

7    too soon and too late.

8          In any event, following conclusion of the first round of PTO reexaminations, Avocent

9    moved to lift the stay in this case.  On October 27, 2009, at the behest of the defendants, this

10   Court denied Avocent's motion to lift the stay to provide time for the Court of Claims action to

11   further develop.  Specifically, the stay was continued "pending the Court of Claims'

12   consideration of any dispositive motions in the related case."  (Dkt. No. 218, p. 2).  On July 7,

13   2010, this Court instructed the parties to advise as to the appropriateness of the stay in light of

14   certain orders entered by Judge Margolis in the Court of Claims action.  (Dkt. No. 223).  By

15   Order of October 26, 2010, this Court again continued the stay.  (Dkt. No. 231).

16         Because Avocent, Rose, and the United States have reached an agreement in principle to

17   settle the Court of Federal Claims action, proceedings in that action have essentially concluded.

18   Avocent anticipates filing a Stipulated Judgment in the Claims Court action and a stipulated

19   dismissal of its claims against the Rose defendants in this action.  Thereafter, this dispute will be

20   between Avocent and the Belkin and Aten defendants.

21         **D.     Resumption of the Raritan Litigation in New York**

22         Two of the patents asserted in this action were previously asserted against Raritan

23   Americas Inc. ("Raritan") in the District Court for the Southern District of New York.[3]  That

24   action was initially tried to the bench in January 2002.  The district court found no infringement

25   based on its construction of numerous claim terms.  On appeal, the Court of Appeals for the

26

27   _____

[3] The '978 patent did not issue until after the conclusion of the earlier litigation between Avocent and Raritan.

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 5
(C06-1711MJP)
3139578.3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   Federal Circuit vacated every one of the district court's claim constructions as too narrow,

2   provided claim constructions for certain of those disputed terms, and remanded the case to the

3   district court.

4        On remand, the action was reassigned to Judge Castel and he issued a further *Markman*

5   claim construction in March 2005.  The case settled on the eve of trial two months later.  The

6   settlement agreement included an initial lump sum for past sales, and a royalty bearing license

7   for future sales with quarterly minimum payments, for a term of five years.  Avocent and Raritan

8   attempted to negotiate an extension of the 2005 Settlement Agreement, but when those efforts

9   failed in August 2010, Avocent was forced to again sue Raritan for patent infringement.  That

10  newly-filed action was assigned to Judge Castel in light of its relatedness to the earlier litigation

11  between these parties.  None of the defendants in this action are involved in that action, and none

12  of the products accused of infringement in this case are at issue in that case – Raritan's non-

13  infringement arguments are unique to its products.  Indeed, Raritan's invalidity and other

14  defenses are different from those asserted by the defendants here.

15       **E.    This Action Is A Dispute Between Head-to-Head Competitors**

16       Avocent, Belkin and Aten all manufacture and sell KVM switches in direct competition

17  with one another.  Industry analyst Venture Development Corporation ("VDC") credits Avocent

18  and its Alabama-based sister corporation, Avocent Huntsville Corporation, with about 51% of

19  the total U.S. KVM sales.  *See* Exh. 9, June 2007 VDC Report, p. 57.  VDC credits Belkin and

20  Aten with about 8% each of the KVM switches sold in the United States – equivalent to

21  approximately $36 million in sales by each in 2006.  VDC rates Avocent, Raritan, Belkin and

22  Aten as the top four market competitors in 2006.

23       Of importance to this motion, the level of competition between Avocent and Aten has

24  grown in recent years, with these two companies now often competing on a head-to-head basis

25  for the same sales.  Avocent is the exclusive supplier of KVM switch products to a number of

26  original equipment manufacturers ("OEM") such as Hewlett-Packard ("HP") and American

27  Power Conversion ("APC").  Under its OEM agreements, Avocent manufactures KVM switch

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 6
(C06-1711MJP)
3139578.3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   products, applying its customers' trade names, and sells those products to the OEM company for

2   re-sale to that company's own customers.  In 2010, Avocent was forced to lower its pricing in

3   order to win the contract to be the exclusive supplier of KVM switch products to Fujitsu.  Aten

4   was Avocent's primary competitor for the Fujitsu contract.  *See* Declaration of Steven Jehring, p.

5   2.  Similarly, in late 2009 and early 2010, Avocent and Aten competed against one another to be

6   the supplier of KVM switch products to OEM manufacturer APC.  *Id.*  Although Avocent had

7   been APC's prior supplier of OEM KVM switch products, APC has advised Avocent that it has

8   lost its bid to remain APC's exclusive supplier of KVM switch products.  *Id.*

9   **II.    ARGUMENT**

10          **A.    The Delay Keeps Growing**

11          This action commenced in late 2006 and has been pending for more than four years.  The

12   action has been stayed for more than three of those years, since October 2007.  Initially, the case

13   was stayed in order to obtain the PTO's expert opinion as to the validity of Avocent's asserted

14   patent claims.  Once that opinion was obtained, the defendants asked this Court to continue the

15   stay on a wide variety of grounds.  The defendants first asked this Court to hold off while the

16   Court of Claims action continued.  When it began to look like that case was wrapping up, the

17   defendants turned their attention to the handful of claims still at issue in the second round of

18   Patent Reexamination proceedings.  More recently, the defendants have urged this Court to allow

19   the August 2010 action against Raritan to proceed *first*, and to let this case gather dust.  The

20   defendants' goal is clear – they want delay, the more the better.  With each passing day, their

21   hope of avoiding an injunction increases as we are one day closer to August 25, 2015, the day the

22   patents-in-suit expire.

23          1.    The Court of Claims Action Is Drawing To A Close

24          Every benefit that could be obtained by awaiting decisions by the Claims Court case has

25   now been provided – the Claims Court issued a *Markman* Order a year ago and ruled on all but

26   one of the dispositive motions.  The last of those rulings was issued more than six months ago

27   and that proceeding is effectively at an end.  The parties to that action have reached an agreement

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 7
(C06-1711MJP)
3139578.3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   in principle to settle, the result of two court-supervised mediations, and are working to execute a

2   final agreement.  The amount Rose and the United States must pay for a paid up license under

3   the patents-in-suit was long-ago agreed upon.  The current discussions relate to a subsequent

4   request by Rose to include additional rights of transfer; Avocent is willing to grant those

5   additional rights for a price, as reflected in a proposal Avocent made to Rose.  Avocent expects

6   that this issue, like the many others addressed by the parties, will be resolved without trial.

7        The Court of Claims case has been dormant since November 2010 when settlement

8   discussions began, and no trial has been scheduled.  This action has been stayed for the past six

9   months awaiting developments in a dormant case.  If the parties fail to consummate the

10  settlement in the Claims Court case, it is not clear how much additional discovery will be

11  required (the discovery in that case cut-off more than 16 months ago, in December 2009) or who

12  will try the case.  Judge Margolis met personally with representatives of Rose and Avocent, on

13  occasion without counsel, over two separate days of mediation, so he may have concerns about

14  now presiding over the trial.  Should the parties' settlement efforts fail, as the defendants appear

15  to suggest in the defendants' portion of the April 26 Joint Status Report, it is impossible to even

16  speculate as to when trial in the Court of Claims case would occur.  Worse, no matter who wins

17  in the Claims Court, the losing party is sure to appeal, imposing even more delay.

18        2.   The Second Round of Patent Reexamination Provides No Basis For Delay

19        Although the defendants' April 26 submission to this Court also attempts to make much

20  of the fact that nine asserted claims are now on appeal at the PTO Board of Patent Appeals and

21  Interferences, the overwhelming majority of asserted claims have been confirmed.  In fact, they

22  have been confirmed twice by different Patent Office Examiners.  Trial will be required as to the

23  more than 25 confirmed claims of the '978 patent alone, whether the nine pod-switch-pod claims

24  of the '978 patent survive or not.  Moreover, every one of the products Avocent accuses of

25  infringing these nine claims are also accused of infringing the many twice confirmed claims of

26  the three patents-in-suit.  Even if the nine rejected claims were to be removed from the suit, not

27  one accused product would be removed from the case.

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 8
(C06-1711MJP)
3139578.3

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    Avocent expects to prevail in its appeal to the Patent Office Board.  Among other things,

2    during the reexamination, Avocent offered to amend the only two rejected independent claims,

3    claims 27 and 41, by adding the requirement that the claimed signal conditioning devices are in

4    separate housings, or "pods"– a feature not found in the prior art which defines the claimed

5    "pod-switch-pod" architecture.  *See* Exh. 10, Avocent Supplemental Response.  This is

6    consistent with the way Avocent's "pod-switch-pod" claims were construed in the earlier Raritan

7    litigation.  This supplemental amendment was offered to clarify what Avocent believed was

8    required all along.  Surprisingly, the Examiner refused the opportunity to avoid the unnecessary

9    cost and delay associated with an appeal to the Board by refusing to enter the proposed

10   amendment on purely procedural grounds.  *See* Exh. 11, Office Action of January 18, 2011, p. 7.

11   Avocent is confident that the Board will correct this error, along with the Examiner's steadfast

12   failure to afford any weight to the prior claim constructions adopted by Judge Castel and the

13   Federal Circuit.

14       **B.    The Stay Should Be Lifted**

15       Resolution of Avocent's claims against the defendants has been delayed too long already.

16   The 39 month delay created by this stay has been a major windfall to the defendants.  They have

17   used the delay to continue making and selling the products accused of infringement and to

18   introduce other, new products which utilize Avocent's patented technology.  Aten, in particular,

19   whose goal is to replace Avocent as the world's largest supplier of KVM switch products, has

20   used the delay in this litigation to maximum advantage.  Within the past year, it has broken into

21   Avocent's OEM business base and increased pricing pressure on Avocent.  It is time to resolve

22   Avocent's claims against defendants Aten and Belkin.  The first step in that process is to lift the

23   stay.

24       Avocent strenuously objected to the imposition of the stay as simply a tactical ploy by the

25   defendants to avoid trial.  The defendants denied that allegation and argued that it was vitally

26   important, and of great benefit to the Court, to provide the Patent Office with time to provide its

27   "expert opinion" as to the patentability of Avocent's patents.  The defendants suggested that the

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 9
(C06-1711MJP)
3139578.3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   whole process would be concluded within one year and that everyone would benefit from the

2   Patent Office's re-evaluation of these patents.  But when the defendants obtained that expert

3   opinion, it was not what they wanted, so they filed another round of reexamination requests and

4   urged this Court to await decisions from the second-filed, derivative Court of Claims litigation.

5   The defendants urged this court to defer in favor of the Court of Claims even though neither

6   Aten nor Belkin are parties to that litigation, only a small portion of Rose's sales are at issue in

7   that case, and Rose contends that even a loss at the Court of Claims would not bind it in this

8   action.

9          Eighteen months later it is more of the same.  The defendants now suggest that the

10   litigation Avocent initiated in August 2010 against Raritan (nearly four years after this case was

11   filed) should go first to preserve resources and to minimize the risk of inconsistent rulings.  The

12   defendants' conduct over the past three and a half years leaves little room for debate -- the

13   defendants are pursuing a delay strategy, with unending stay requests.

14          If the defendants are in fact concerned by the risk of inconsistent judgments as they

15   profess to be, Avocent has no objection to the transfer of this action to the Southern District of

16   New York.  As its name implies, Avocent is headquartered in Redmond, Washington, but it is

17   willing to forgo its home court advantage over these defendants to eliminate that risk.  Judge

18   Castel of the Southern District of New York presided over the 2004-2005 remand of Avocent's

19   claims against Raritan and became very familiar with Avocent's patented technology in

20   connection with that earlier litigation.  It was Judge Castel who issued a *Markman* Order

21   construing the claims of the '096 and '264 patents in 2005.  Because of that familiarity, Judge

22   Castel accepted Avocent's 2010 filing against Raritan as a related case and he is the presiding

23   judge in that action.  Beyond minimizing the risk of inconsistent judgments, transfer of this

24   action to the Southern District of New York may also increase judicial economy by eliminating

25   the need for two judges to come up to speed on the same technology.  Accordingly, should this

26   Court be so inclined, Avocent would have no objection to the transfer of this action to the

27   Southern District of New York court under 28 U.S.C. § 1404.

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 10
(C06-1711MJP)
3139578.3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   This case, filed November 27, 2006, was scheduled to go to trial on June 23, 2008, a little

2   less than 17 months later.  After having obtained a three and a half year delay in trial, the

3   defendants request delay of another year or more before discovery in this case should resume.

4   Through their portion of the July 17, 2010 Joint Status Report, the defendants suggested that any

5   schedule going forward would have to essentially restart the 17 month period in light of

6   intervening developments (which were supposed to streamline this action, according to

7   defendants).  Despite the fact that this action, including all appeals, could have been resolved

8   about two years ago, the defendants seek more delay and then a re-start of the 17 month pre-trial

9   schedule.  Thus, contrary to their arguments in 2007, the stay has proven to complicate – not

10  simplify – this case.

11      This court has previously recognized that a stay is not favored where, as here, the

12  litigants are direct competitors.  *See F5 Networks, Inc. v. A10 Networks, Inc.*, 2010 U.S. Dist.

13  LEXIS 136238, *6-7 (W.D. Wash. 2010); *see also Oracle Corp. v. Parallel Networks, LLP*,

14  2010 U.S. Dist. LEXIS 93164, *11 (D. Del. 2010); *Nidec Corp. v. LG Innotek Co., Ltd.*, 2009

15  U.S. Dist. LEXIS 46123, *10-11 (E.D. Tex. 2009).  Here, the Aten, Belkin and Rose defendants

16  are direct competitors of Avocent.  Aten has recently taken APC, a very important OEM

17  customer, from Avocent and has driven Avocent to lower its pricing.  Collectively, these three

18  defendants sell over $80 million dollars of accused products every year.  With the expiry of these

19  patents fast approaching, any further delay will effectively deny Avocent the exclusivity patents

20  rights are supposed to confer.  The prejudice of such a result is manifest.

21  **III.     CONCLUSION**

22      Accordingly, Avocent respectfully requests an Order lifting the stay and scheduling a

23  Scheduling Conference to set a revised Case Schedule.

24

25

26

27

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 11
(C06-1711MJP)
3139578.3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1

2

DATED this 28th day of April, 2011.

3
s/John A. Knox
John A. Knox, WSBA #12707

4
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100

5
Seattle, WA  98101-2380
Tel:  (206) 628-6600

6
Fax:  (206) 628-6611
Email: jknox@williamskastner.com

7

8
James D. Berquist
J. Scott Davidson

9
Donald L. Jackson
DAVIDSON BERQUIST JACKSON & GOWDEY, LLP

10
4300 Wilson Blvd., Suite 700
Arlington, Virginia 22203

11
Tel: (703) 894-6400

12
Fax: (703) 894-6430
Email:  jay.berquist@davidsonberquist.com

13
scott.davidson@davidsonberquist.com
dlj@dbjg.com

14

15
Attorneys for Plaintiff Avocent Redmond Corp.

16

17

18

19

20

21

22

23

24

25

26

27

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 12
(C06-1711MJP)
3139578.3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 28, 2011 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Attorneys for Rose Electronics, Peter Macourek, and Darioush "David" Rahvar:*

Jeremy E Roller
Yarmuth Wilsdon Calfo PLLC
818 Stewart St., Ste. 1400
Seattle, WA 98101

Michael S. Dowler
Park Vaughn Fleming & Dowler
5847 San Felipe Ste 1700
Houston, TX 77057

Floyd R. Nation
Jeffrey J. Phillips
WINSTON & STRAWN LLP
1111 Louisiana, 25th Floor
Houston, TX 77002

Brian L. Jackson
LAW OFFICE OF BRIAN L. JACKSON
1302 Waugh Drive, #582
Houston, TX 77019-3908

*Attorneys for Aten Technology, Inc. and Aten International Co., Ltd.:*

Thomas F. Ahearne
Jeremy R. Larson
FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3400
Seattle, WA 98101-3299

Ming-Tao Yang
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203

*Attorneys for Belkin International, Inc. and Belkin, Inc.:*

Michael A. Moore
CORR CRONIN MICHELSON BAUMGARDNER
& PREECE LLP
1001 4th Ave Ste 3900
Seattle, WA 98154-1051

David P. Enzminger
Ryan K. Yagura
Vision L. Winter
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899

DATED this 28th day of April, 2011.

s/John A. Knox _____

AVOCENT'S MOTION TO LIFT THE STAY AND REQUEST FOR
A SCHEDULING CONFERENCE - 13
(C06-1711MJP)
3139578.3

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600