UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
AVOCENT REDMOND CORP.,                  )
                                        )   Case No. C06-1711RSL
            Plaintiff,                  )
      v.                                )
                                        )   ORDER GRANTING IN PART
ROSE ELECTRONICS, *et al.*,             )   BELKIN'S MOTION FOR
                                        )   SUMMARY JUDGMENT
            Defendants.                 )
_____)

        This matter comes before the Court on "Belkin, Inc. and Belkin International, Inc.'s Motion for Partial Summary Judgment" (Dkt. # 590) and "Avocent's Motion to Strike Belkin's Motion for Partial Summary Judgment and Supporting Materials" (Dkt. # 609).

        Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of the materials in the record that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)(1)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient:" the opposing party must present probative evidence in support

of its claim or defense.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] having heard the arguments of counsel, and taking the evidence in the light most favorable to Avocent, the Court finds as follows:

**A. FAILURE OF PROOF**

Belkin argues that Avocent is unable to establish "the vast majority" of its infringement claims because (1) the technical schematics on which Avocent relies are not properly authenticated and constitute hearsay, (2) expert testimony based on the inadmissible schematics cannot be considered, and (3) Avocent did not reverse engineer every one of the accused Belkin products.

**1. Evidentiary Objections**

Belkin's objections to consideration of the technical schematics related to its products rest primarily on counsel's assertion that Avocent failed to conduct formal discovery regarding the authenticity of those documents.  The schematics were obtained from Belkin's third-party vendors, some at Belkin's request (in which case Belkin produced the schematics to Avocent) and some at Avocent's request (in which case the third-party vendor produced the schematics directly to Avocent).  Belkin maintains that it is unable to identify or otherwise authenticate the schematics and has no knowledge regarding their accuracy.

To authenticate or identify a document under Fed. R. Civ. P. 901(a), a party must

---

[1] Plaintiff's objections to Belkin's use of footnotes is overruled.  The Court has not, however, considered the lengthy descriptions of evidence and supplemental argument presented in the Declaration of Yasser El-Gamal (Dkt. # 592).  Mr. El-Gamal's statements based on personal knowledge and the attached exhibits have been considered to the extent they were referenced in the motion itself.

produce evidence sufficient to support a finding that the document is, in fact, what the party claims it is.  The Court finds that there are indicia of authenticity in the existing record, that Belkin has offered no reason to doubt that the technical schematics are anything other than the third-party vendors' working diagrams of Belkin's products,[2] and that Avocent has the opportunity to produce additional authenticating evidence at trial if and when these documents are offered.  Many of the schematics at issue were obtained by Belkin from its third-party vendors after Avocent reminded Belkin that it was obligated to produce not only the documents within its immediate possession, but also those in its custody and control.  The correspondence between the parties, the stamps and logos on certain documents, the established similarities between certain schematics and the accused products they are said to represent, and the production history of these documents all support a finding that the documents are, in fact, the technical schematics for Belkin's products.  In addition, Avocent could subpoena witnesses to testify at trial if additional evidence is needed to overcome Belkin's authenticity objections.[3] The Court is not inclined to dismiss causes of action where technical deficiencies in the evidence can be easily remedied.

With regards to the hearsay objections, the Court agrees that the technical schematics are statements and that Avocent intends to offer them to prove the truth of the matters asserted therein.  The question is whether the statements can be attributed to Belkin under Fed. R. Ev. 801(d)(2) and/or whether an exception to the bar against hearsay evidence applies.  Although simply producing documents in response to a discovery request does not necessarily indicate that the producing party agrees with statements contained in the production

---

[2] The Court's decision in Kreidler v. Pixler, 2010 WL 1507888 (W.D. Wash. Apr. 14, 2010), is distinguishable because there was significant evidence in that case that the documents were not reliable.  Belkin, in contrast, has not identified any problems with the technical schematics, either as to their mode of production or as to their contents.

[3] Contrary to Belkin's argument, discovery is not the only method to obtain testimony, and the fact that Avocent did not previously expend energy attempting to debunk as-yet-unmade evidentiary objections does not foreclose the possibility of calling authenticating witnesses at trial.

ORDER GRANTING IN PART BELKIN'S
MOTION FOR SUMMARY JUDGMENT             -3-

or otherwise adopts the statements for purposes of Rule 801(d)(2), in the circumstances presented here, many of the statements can fairly be attributed to Belkin.  Belkin produced a number of these documents in order to discharge its discovery obligations in this federal litigation.  Belkin was asked to produce the technical schematics for its products, presumably searched the records within its possession, custody, and control, and designated these documents as responsive to the request.  Belkin effectively represented that these documents were the technical schematics requested, despite its repeated attempts to disavow the production it was making and/or to disclaim any knowledge that might authenticate the documents.  Belkin also linked these schematics to its products, again treating the documents as if they were what they purport to be.  Whether Belkin authorized its third-party vendors to produce responsive documents or indicated its adoption of the documents as the schematics for its products, the Court finds in the abstract that the statements contained in the technical schematics are attributable to the party opponent and are not hearsay.  The Court need not, therefore, consider whether an exception to the hearsay rule applies.

Belkin's evidentiary objections are overruled without prejudice to their being raised again if and when Avocent offers particular documents into evidence.

**2. Expert Testimony**

Belkin offers no support for its contention that an expert's opinion must be excluded if based on inadmissible evidence.  Fed. R. Ev. 703 expressly authorizes the presentation of opinions based on facts or data that are themselves inadmissible, as long as experts in the field would reasonably rely on those kinds of facts or data.  See also U.S. v. W.R. Grace, 504 F.3d 745, 759 (9th Cir. 2007).  It cannot reasonably be doubted that engineers and technical experts would rely on the technical schematic of a product when evaluating its component parts, structures, and/or practice methods.  Thus, even if every technical schematic were excluded from evidence as hearsay or for lack of authenticity, Avocent still has evidence in the form of its expert's opinion to support its infringement claims.

### 3. Limited Testing

Avocent has the burden of presenting evidence from which a reasonable jury could infer that each accused Belkin product infringes. There is no doctrine of law or logic that would require destructive testing of each and every Belkin product in order to satisfy this burden. Belkin is free to argue that, in the absence of reverse engineering, the expert's understanding of the structure and components of a particular product is questionable, but it will be up to the jury to determine whether plaintiff has shown infringement on a more likely than not basis.

### B. "KEYBOARD OR CURSOR CONTROL DEVICE" ELEMENT

Belkin argues that none of its accused products infringes claims 1, 6, 7, 11, 20, 26, or 32 of the '096 patent because the products do not have the capability of detecting both keyboard and cursor control device signals. Belkin argues that the various claim elements that describe how the invention responds to "the keyboard or cursor control device signals" necessarily mean that the product must have the capability of responding to signals from a keyboard <u>and</u> a cursor control device, although not at the same time. Nothing in the claim language compels such a reading. "Or" is normally and ordinarily used as a conjunction identifying alternatives. Absent some indication of a specialized meaning assigned by the inventor or contextual clues suggesting that each item in the list must be a reality as opposed to an alternative, the fact that the logic circuit must operate "to detect keyboard or cursor control device signals" does not impose a requirement for multiple operational capabilities. As long as the product responds to signals from either a keyboard or a cursor control device, this element is satisfied.

In addition, Belkin has failed to produce evidence from which the Court could conclude that its products do not detect cursor control device signals. The Declaration of Carlos Del Toro (Dkt. # 591) at ¶ 30 on which Belkin relies states only that the "Belkin KVM switches do not allow a user to use a mouse to control switching." There are, of course, other types of cursor control devices, and Mr. Del Toro's circumspect testimony does not establish non-

ORDER GRANTING IN PART BELKIN'S
MOTION FOR SUMMARY JUDGMENT                -5-

infringement.

### C. "INDEPENDENT, DEDICATED CABLE" ELEMENT

A cable, as that term is used in the '264 and the '978 patents, is "an assembly of electrical conductors insulated from each other and laid up together, with or without an outer sheath or wrapping." To be "independent, dedicated cables," the assembly of electrical conductors that are laid up together to make an identifiable "cable" must be devoted to a single task or purpose, such as conveying keyboard signals, mouse signals, or video signals. There is nothing in the claims or specification that would preclude the bundling of two or more "independent, dedicated cables" within a common outer binding or wrapping.

Avocent has failed to raise a triable issue regarding the existence of the necessary "independent, dedicated cable" in Belkin's accused products. Belkin has shown that the cable housing leading from the workstation to the server contains an undifferentiated mishmash of insulated electrical conductors (otherwise known as wires). Motion (Dkt. # 590) at 13. The wires that convey keyboard signals are not grouped, bound, twisted, or wrapped in any way that would create an "independent, dedicated cable" within the larger housing. Rather, those wires, along with the wires that carry the cursor device and video signals, are all laid up together in a single, undifferentiated cable. The "independent, dedicated cable" element of the '264 and '978 patents is not found within Belkin's accused products.

### D. LOST PROFIT CLAIM

Belkin argues that Avocent will be unable to prove lost profits because Belkin does not compete directly against Avocent in the original equipment manufacturer market and because Avocent cannot show that "but for" the alleged infringement, Avocent or one of its customers would have made a particular sale. Avocent has provided evidence from which one could reasonably conclude that, had Belkin refrained from copying the invention, Belkin's customers would have purchased from the remaining market participants, including a number of original equipment manufacturers supplied by Avocent. Although certainly not compelling,

Avocent has also provided evidence from which one could conclude that Belkin's customers would have participated in the market as other purchasers have done, giving Avocent and its customers a share of their purchases that approximates their current market share.[4]  Summary judgment is not appropriate, although Belkin may raise this issue again at the close of plaintiff's case and/or at the end of trial.

**E.  BEGINNING OF THE DAMAGES PERIOD**

In order to recover damages in an action for infringement prior to the date the action was filed, a patent owner must give either constructive or actual notice of the patent.  35 U.S.C. § 287(a).  Constructive notice involves marking each patented product with the appropriate patent number or equivalent information.  When products are appropriately marked, the public is deemed to be "on notice" that the product is protected and is not freely available. Compliance with the marking statute is established by showing "that substantially all of the [patented products] being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous."  Nike, Inc. v. Wal-Mart Stores, Inc., 138 F.3d 1437, 1446 (Fed. Cir. 1998).[5]  The marking requirement applies to licensees and other parties authorized to make or sell the patented product.  35 U.S.C. § 287(a); Maxwell v. J. Baker,

---

[4] In reply, Belkin argues that no right-thinking consumer would purchase a switch from Avocent when the same exact product is available from its sister-company, Huntsville, for a much lower price. Reply (Dkt. # 665) at 9.  The testimony cited by Belkin relates to the original equipment manufacturer's profit margins and the cost of customization, however, and does not support Belkin's argument.

The Court declines to conduct a Daubert analysis regarding the reliability of Dr. Kerr's report or the adequacy of Mr. McAlexander's opinions in the context of the one-paragraph arguments contained in Belkin's reply memorandum.  Reply (Dkt. # 665) at 10 and 12.

[5] Although the Nike court cites Am. Med. Sys., Inc. v. Med. Eng'g Corp., 6 F.3d 1523 (Fed. Cir. 1993), as authority for its holding, compliance with the marking statute under Am. Med. Sys. arguably requires the complete and total cessation of distribution of unmarked product.  6 F.3d at 1538 ("Full compliance [with the marking statute] was not achieved until AMS consistently marked substantially all of its patented products, and it was no longer distributing unmarked product.").  Because Nike is the Federal Circuit's most recent discussion of the what the marking statute requires, the Court has applied the more lax "substantially consistent and continuous" analysis.

ORDER GRANTING IN PART BELKIN'S
MOTION FOR SUMMARY JUDGMENT                -7-

Inc., 86 F.3d 1098, 1111 (Fed. Cir. 1996).[6]

Avocent acknowledges that unmarked products subject to the '096 patent were sold by its sister company, Avocent Huntsville, until July 2003. In addition, Avocent sold unmarked products subject to the '264 patent until September 2003. Avocent may not, therefore, recover damages for periods before July 2003 with regards to the '096 patent or before September 2003 with regards to the '264 patent.[7] Avocent does not contest Belkin's contention that Avocent failed to mark any of its products with the '978 patent and failed to provide actual notice of the patent's existence prior to the filing of this lawsuit. Thus, the damage period for the '978 patent began to run on January 16, 2007, when Belkin was added as a defendant in this lawsuit. 35 U.S.C. § 287(a) ("Filing of an action for infringement shall constitute such notice.").

For all of the foregoing reasons, "Belkin, Inc. and Belkin International, Inc.'s Motion for Partial Summary Judgment" (Dkt. # 590) is GRANTED in part and DENIED in part. Avocent has failed to raise a genuine issue of material fact regarding the existence of the "independent, dedicated cable" element of the '264 and '978 patents in Belkin's accused products. Avocent is therefore unable to show infringement of the claims that include or depend on the "independent, dedicated cable" element. Avocent is precluded from seeking damages from Belkin for infringement of the '096 patent before July 2003, for infringement of the '264 patent before September 2003, and for infringement of the '978 patent before January 2007. Avocent's "Motion to Strike Belkin's Motion for Partial Summary Judgment and Supporting Materials" (Dkt. # 609) is GRANTED in part and DENIED in part.

---

[6] The Court finds that the "rule of reason" approach does not apply to product sold by Avocent Huntsville because that entity is not a "third party unrelated to the patentee." Maxwell, 86 F.3d at 1111. Avocent must show that "substantially all" of the patented products being distributed by Avocent and Avocent Huntsville were marked.

[7] Avocent's first attempt to provide actual notice to Belkin of the '096 and '264 patents occurred in October 2003, after constructive notice had been provided.

ORDER GRANTING IN PART BELKIN'S
MOTION FOR SUMMARY JUDGMENT            -8-

1                     Dated this 13th day of November, 2012.

2

3                                   Robert S. Lasnik

4                                   United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING IN PART BELKIN'S
MOTION FOR SUMMARY JUDGMENT         -9-